In re FOAM SYSTEMS
COMPANY, Debtor.

INSURANCE COMPANY OF THE
WEST, a corporation, Appellant,

v.

William J. SIMON, Trustee, Appellee.

BAP No. CC–87–1935 VMoJ.
Bankruptcy No. SB 86–02511 DN.
Adv. No. SB 87–0301 DN.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Jan. 21, 1988.

Decided Aug. 31, 1988.

Bruce E. Grubaugh, Orange, Cal., for appellant.

James L. Huffman, Santa Ana, Cal., for appellee.

Before VOLINN, MOOREMAN and JONES, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

### FACTS

#### A.

In 1983, Ryan Marine Corporation and debtor Foam Systems Company entered into a contract whereby Foam Systems was to supply polyurethane foam insulating material for use in the construction of ships for the U.S. Navy. The material was to be delivered over a five-year period from 1983 to 1988. In accordance with the contract, Ryan Marine paid Foam Systems $255,000, the entire contract price, in advance. Ryan Marine required an advance payment bond to indemnify it in the event that the money was used for purposes other than meeting the requirements of the contract.

Insurance Co. of the West (Insurance Co.), appellant in this case, issued the advance payment bond for the benefit of Ryan Marine conditioned upon Foam Systems' use of the funds solely to fulfill its obligations under the supply contract. The bond was for $300,000, which represented the contract price, plus an estimate of accumulated interest. According to its terms, the bond would be reduced in $100,000 increments at specified dates.

The contract price was placed in an interest bearing account at Security Pacific National Bank. The account was in the debtor's name. The debtor and Insurance Co. had agreed that the account would be in the debtor's name for tax reporting purposes, as the interest would accrue to the debtor. However, Insurance Co. retained control over the account. Two signatures were required for drawing on the account; either the signatures of two representatives of the appellant or one signature by a named representative of the debtor and one by the appellant's nominee. Thus, no funds could be disbursed without the signature of at least one of Insurance Co.'s officers. The funds were never deposited in any general account of the debtor, nor were they commingled until after disbursement from the controlled account.

On April 1, 1986, the account was transferred to Riverside National Bank ("the Bank") at Foam Systems' request. As at Security Pacific, two officers of Insurance Co. and one officer of Foam Systems were authorized signatories on the account. Any two acting together could withdraw funds from the account. By this time, $100,000 had been released to Foam Systems. The balance in the account at the time of the transfer was $191,435.30.

On May 7, 1986, the debtor filed a petition under Chapter 11 of the Bankruptcy Code. The debtor's statement of affairs did not list any account held in trust. In a letter dated October 8, 1986, William M. Knooihuizen, Chief Executive Officer of Foam Systems, assured Ryan Marine that the advance payment account was separate from the jurisdiction of the bankruptcy proceedings. Although he also assured Ryan Marine that the debtor would continue to fulfill the contract, the debtor failed to make the remaining shipments.

Ryan Marine subsequently declared the debtor to be in default and canceled the contract. Ryan Marine also requested that Insurance Co. make payment according to

the terms of the bond, which was done. Ryan Marine released Insurance Co. from any obligations under the bond and assigned to it all rights under the contract with Foam Systems.

#### B.

On January 20, 1987, the case was converted to Chapter 7 and William J. Simon, appellee in this case, was appointed trustee. Insurance Co. subsequently requested that the Bank inform it of the status of the account. The Bank refused to provide any information. Insurance Co. requested that the trustee release the funds in the advance payment account, a request to which the trustee did not respond.

On May 21, 1987, Insurance Co. commenced an adversary proceeding for reclamation of the funds. The parties agreed that the facts were not in dispute and that the court need only decide if any of the legal theories presented by Insurance Co. would support its recovery of the funds in the account. Insurance Co. asserted that the account was held in trust pursuant to an express trust; that the money was subject to a resulting trust; and that it had a perfected security interest in the money. The case was tried on July 13, 1987, and the bankruptcy court decided it as though it had been submitted on cross-motions for summary judgment.

The memorandum decision of the bankruptcy court makes no mention of an express trust. The court determined that, although the case was close, the equities of the case did not favor the imposition of a resulting trust. While the debtor had not earned the full balance of the account and under contract law, without bankruptcy, Insurance Co. would have prevailed over the debtor, the court nevertheless concluded that the balance of equities must take into account not only the debtor and Insurance Co., but also creditors of the estate. In this case, there was no public notice that anyone other than debtor had an equitable interest in the account. The funds had not

been placed in trust by a state court decree or pursuant to a trust agreement. In addition, the title of the account did not indicate an ownership interest in any party other than debtor. The bankruptcy court noted that the account was opened in the debtor's name at the insistence of Insurance Co.

The bankruptcy court also concluded that Insurance Co. had not perfected its security interest in the funds. Although Insurance Co. did have a lien on the funds pursuant to the indemnity agreement, it failed to give the proper notification to the bank to perfect a deposit account security interest.

The bankruptcy court entered judgment that the account and associated certificate of deposit * was the property of the estate, that Insurance Co. did not have a perfected security interest in the account, and that Insurance Co. take nothing by its complaint. Insurance Co. appeals the entry of that judgment.

#### STANDARD OF REVIEW

The bankruptcy court decided the case as though it were submitted on cross-motions for summary judgment. We review *de novo*, orders on motions for summary judgment. *In re Center Wholesale Inc.*, 788 F.2d 541 (9th Cir.1986); *In re Stephens*, 51 B.R. 591 (9th Cir. BAP 1985).

#### DISCUSSION

1. Did the trial court err in determining that the money in the bank account was the property of the estate?

▮▮▮▮ Insurance Co. contends that the funds in the bank account were not the property of the estate because the account was property to which the debtor held only bare legal title and in which Insurance Co. held the beneficial interest. Two theories are advanced for this proposition: that the parties created an express trust, and that the funds were a resulting trust for the benefit of Insurance Co. Property that is truly in trust is not property of the estate within the meaning of section 541 of the

---

* Our review of the record, including the documentation of debtor's bank accounts, failed to disclose the existence of a certificate of deposit.

Bankruptcy Code. *In re North American Coin & Currency, Ltd.*, 767 F.2d 1573, 1575 (9th Cir.1985). The existence and nature of the debtor's interest in property are determined by reference to state law. *Id.* We conclude that the Bankruptcy Court correctly determined that the account did not represent a trust for the benefit of Insurance Co.

a. *Express trust.*

██ Insurance Co. contends that an express trust was created under California law. The elements of a valid trust under California law include a competent trustor, an intention on the part of the trustor to create a trust, a trustee, an estate conveyed to the trustee, an acceptance of the trust by the trustee, a beneficiary, a legal purpose, and a legal term. *In re Teichman*, 774 F.2d 1395, 1399 (9th Cir.1985). The bankruptcy court properly determined that there was no express trust. There is no evidence that the debtor, the supposed trustor, intended to create a trust. The indemnity agreement in which debtor and its president agreed to indemnify Insurance Co. for its undertaking as surety states:

> The indemnitors hereby assign, transfer, pledge and convey to the Surety … as collateral security, to secure the obligations hereunder and any other indebtedness and liabilities of the Indemnitors to the Surety, all of their rights under the contracts, referred to in such bonds, including their right, title and interest in and to … (3) any and all sums due or which may thereafter become due under such contracts and all sums due or to become due on all other contracts, bonded or unbonded, in which any or all of the Indemnitors have an interest.

Thus, the intent of the debtor and its president was to create a security interest in the account. Indeed, as discussed below, the bankruptcy court concluded that Insurance Co. had a lien on the bank account. However, the account did not represent an express trust for the benefit of Insurance Co.

b. *Resulting trust.*

██ Insurance Co. also contends that the funds were a resulting trust in which it

had the beneficial interest. A resulting trust arises from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest. *American Motorists Insurance Co. v. Cowan*, 127 Cal.App.3d 875, 179 Cal.Rptr. 747, 752 (1982); 7 Witkin, *Summary of California Law*, "Trusts", § 123, p. 5481 (8th ed. 1974). "A resulting trust differs from an *express trust* chiefly in that (1) it arises by operation of law, without an expressed intent, and (2) the resulting trustee ordinarily has no duty other than to transfer the property to the person entitled." Witkin, *supra*, at 5481 (emphasis in the original). The resulting trust carries out the inferred intent of the parties. *Id.* The imposition of a resulting trust is an equitable remedy. *See In re Washburn & Roberts, Inc.*, 795 F.2d 870, 872 (9th Cir.1986).

██ As noted above, the express intent of the parties was that Insurance Co. have a lien on the account as security for its undertaking as surety for the debtor. The bankruptcy court concluded that the equities militated against the imposition of a resulting trust. We agree. If the only parties to be considered were Insurance Co. and the debtor, then the equities might favor the imposition of a resulting trust. However, in light of the Bankruptcy Code's strong policy of ratable distribution among all creditors, the bankruptcy court properly declined to exclude the funds in the account from the debtor's estate by imposing a resulting trust. *See In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1419–1420 (9th Cir.1985) (although equities as between debtor and one group of creditors favored imposition of a constructive trust, court would not impose constructive trust and deprive estate of property which could be distributed to other creditors as well); *In re North American Coin & Currency, Ltd.*, 767 F.2d 1573, 1575 (9th Cir.1985) (court reluctant to exercise relatively undefined equitable power, the imposition of a constructive trust, in favor of one group of potential creditors at the expense of other creditors, because ratable distribution among all creditors is one of the strongest policies of bankruptcy law.)

2. Did the trial court err in determining that Insurance Co. had not perfected a security interest in the funds?

The bankruptcy court concluded that although Insurance Co. had a lien on the account, it did not perfect its security interest by giving the proper notice to the bank to perfect a deposit account security interest, as required by Cal.Com.Code § 9302. Insurance Co. contends that it did give the proper notice because the signature card contained the signatures of two of its officers, and no funds could be withdrawn from the account without the signature of at least one of them. Thus, Insurance Co. contends, the signature card provided the proper notice to the bank of its interest in the account to perfect its security interest.

Cal.Com.Code § 9302(1)(g)(i) and (ii) (West Supp.1988) provides:

(1) A financing statement must be filed to perfect all security interests except the following:

. . . . .

(g) A security interest in a deposit account. Such a security interest is perfected:

(i) As to a deposit account maintained with the secured party, when the security agreement is executed.

(ii) As to a deposit account not described in subparagraph (i), when notice thereof is given in writing to the organization with whom the deposit account is maintained.

Thus, Insurance Co. could have perfected its security interest in the bank account which was in debtor's name by giving written notice of that security interest to the bank. *See Johanson Transp. v. Jimmy Grizzard Sales,* 164 Cal.App.3d 583, 592, 210 Cal.Rptr. 433, 438 (1985). It did not do so. Insurance Co. contends that, in effect, the bank had constructive notice of its security interest by virtue of the fact that two of its officers were authorized to withdraw from the account, and that the signature of at least one of them was required for any withdrawal. Assuming *arguendo* that constructive notice might suffice to perfect a security interest under Cal.Com. Code § 9302(1)(g)(ii), we conclude that the signature card would not have given notice that a security interest was claimed in the account by the co-signator. The account is in the name of Foam Systems Co. Although the names of two officers of Insurance Co. do appear as authorized signatures on the account, they are not identified as such; in fact, the signatures appear in the spaces next to the printed designations for the president and vice-president of the corporate depositor. Thus, the signature card did not give any notice of the security interest of Insurance Co. in the account.

## CONCLUSION

The bankruptcy court correctly concluded that the funds in the account in debtor's name were neither an express trust nor a resulting trust for the benefit of Insurance Co., but were property of the estate within the meaning of section 541 of the Bankruptcy Code. The court was also correct in its determination that Insurance Co. failed to perfect its security interest in the account.

The judgment of the bankruptcy court is AFFIRMED.