In re ANCHORAGE NAUTICAL TOURS, INC., Alaska Cook Inlet Adventures, Inc., Anchorage Harbor Masters, Inc., Debtors.

**KETCHIKAN SHIPYARD, INC., Appellant,**

v.

**ANCHORAGE NAUTICAL TOURS, INC., Alaska Cook Inlet Adventures, Inc., Anchorage Harbor Masters, Inc., Appellees.**

BAP No. AK–89–1020 VJR.
Bankruptcy Nos. A88–00831 to A88–00833.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 24, 1989.

Decided Aug. 11, 1989.

Douglas W. Harris, Bellevue, Wash., for appellant.

George R. Lyle, Guess & Rudd, Anchorage, Alaska, for appellees.

Before VOLINN, JONES and RUSSELL, Bankruptcy Judges.

VOLINN, Bankruptcy Judge:

Ketchikan Shipyard, Inc. (yard) appeals an order, which authorized a vessel insurer to pay to the debtor in possession (appellee) as shipowner insurance proceeds, arising from prepetition damage to the ship. The order further authorized use by the appellee of part of these proceeds over the objection of appellant yard. The yard contends that, because it repaired the ship pursuant to an assignment of the insurance monies, a constructive trust should have been imposed for its benefit on the proceeds to the extent of its repair claim. We conclude that the appellee unavoidably assigned its rights to the insurance claim before the case was filed. We therefore reverse the order from which the appeal was taken and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.

The three affiliated debtors, named above, conducted harbor and dinner cruises out of the port of Anchorage on the M/V MIKI MIKI. The ship was owned by one of the debtors, Anchorage Harbor Masters, Inc. After grounding in June, 1988, the vessel required substantial repairs, estimated at some $300,000, for which its owner was unable to pay. Insurance was maintained through Utica Mutual Insurance Company. The nature of the policy was not directly explained, nor copies of its relevant provisions provided for the record. However, it appears that the insurer indemnified the shipowner only for repair costs actually paid.[1]

The parties had been advised that insurance proceeds could be paid directly to the yard if Alaska Continental Bank, the mortgagee and loss payee, agreed and if the owner assigned the proceeds to the yard. It is undisputed that appellee shipowner, the yard, and representatives of the underwriter agreed that the yard should make the repairs and could expect payment directly from the underwriters to the extent that the work was approved by the adjuster. Having been given to understand that the owner intended to, and would, make the necessary arrangements for payment, the yard furnished the repairs. The resulting bill for $287,050 remains unpaid.

The debtor never signed its payment order as required by the underwriters. The debtor also failed to obtain the signature of the mortgagee, which has gone into a receivership under the Federal Deposit Insurance Corporation (FDIC). At oral argument, counsel for the FDIC conceded that the yard had a legitimate interest in the insurance monies and that the FDIC was not claiming them.

### B.

The appellee owner filed for relief under Chapter 11 on August 30, 1988. The insur-

---

1. American marine underwriters commonly cover shipowners with respect to vessel damage under standard form American Institute Hull Clauses that are appended to standard form protection and indemnity policies, covering injuries and property damage connected with vessel operations. *See* L. Buglass, *Marine Insurance and General Average in the U.S.* 365 (2d ed.1981). The typical coverage is indemnification "for any sums which the Assured, as owner of the Vessel, shall have become liable to pay, *and shall have paid,* in respect of any casualty or occurrence during the currency of the Policy...." Cohen & Chase, 7A *Benedict on Admiralty* § 2.01 (Form 2.01—4) at 2–18.2(5) (7th ed.1988) (emphasis added).

ance company requested an order determining who was entitled to payment. The debtor in possession applied for an order, directing disbursement of the insurance money to it and to use $100,000 to maintain the ship and prepare it for the next tourist season. The yard opposed, claiming the proceeds for itself. The yard also requested relief from the automatic stay to act against the insurance company directly.[2]

After an evidentiary hearing, the court granted the debtor's applications and denied the yard's motion for relief from stay. The court found orally that the yard had in effect extended credit to the debtor when it repaired the MIKI MIKI and neglected to protect itself by insisting upon executed payment orders before commencing the work. The court found further that the debtor did not act fraudulently with respect to its own failure to sign the payment order and obtain other necessary signatures.

A written order, concluding that the insurance proceeds were property of the estate and authorizing Utica Mutual to pay the proceeds into the trust account of the lawyer for the debtor in possession, was filed on December 22, 1988. The order allowed expenditures up to $100,000, subject to specific budgetary and reporting requirements. For "adequate protection," the court granted the yard a lien on the ship, subordinate to the existing preferred ship mortgages, in an amount equal to the disbursements made from the insurance funds and to be enforceable if the order should be reversed on appeal.[3] The balance of proceeds above $100,000 was ordered held in the trust account of the debtor in possession's lawyer pending appeal, the confirmation of a plan, or other further court order. The yard timely filed its notice of appeal on December 30, 1988.

The yard sought a stay pending appeal that would disallow any use of the insurance funds. The bankruptcy court denied the motion on February 6, 1989.

On March 15, 1989, the yard filed a motion for stay with this court. The record is unclear as to when, but it appears that, prior to this motion, the vessel had sunk. The debtor had perforce changed its course and directed its efforts toward obtaining the remaining insurance proceeds. Its plan was to use these proceeds to buy or lease another ship in order to continue its chartering business. On April 10, 1989, the Appellate Panel issued a stay, and set oral argument for May 24, 1989. It appears that, before the latter stay was issued, the bankruptcy court allowed the debtor in possession to make additional withdrawals from the insurance fund. Only $100,000 remains. Counsel for the FDIC informed the panel at oral argument that the amount of its claim as mortgagee extends to the limits of the hull policy, payable with respect to the vessel's sinking. The mortgagee has priority to payment of insurance proceeds from loss of the vessel with the result that the yard will receive nothing from these proceeds. Thus, the fund immediately at issue is the remaining $100,000 of the proceeds, arising from the prepetition damage to the ship.

### ISSUE ON APPEAL

The yard seeks vindication of its claims to the insurance fund and to act directly against Utica Mutual Insurance Company.

---

**2.** Because the owner did not pay for the repairs, it is questionable whether the insurance company could have been compelled to pay anyone. *See Ahmed v. Am. S.S. Mut. Protection & Indem. Ass'n,* 640 F.2d 993, 995 (9th Cir.1981) (under marine indemnification policies, "the insurer's obligation to pay does not arise until after the insured suffers an actual monetary loss."), *cert. denied,* 464 U.S. 826, 104 S.Ct. 98, 78 L.Ed.2d 103 (1983); *Miller v. Am. S.S. Owners Mut. Protection & Indem. Company,* 509 F.Supp. 1047, 1048 (S.D.N.Y.1981) (injured seaman precluded from acting against indemnity underwriter of his insolvent employer by virtue of the limitations of the insurance contract under which the insured may not sue until it has paid and of the applicable direct action statute). However, it appears that the insurer did not resist payment.

**3.** It appears that the yard already held a maritime lien on the ship to secure unpaid repairs under 46 U.S.C.App. § 971, the Federal Maritime Lien Act, unless an adverse party can overcome the presumption that the yard gave credit to the vessel. The appellant did not address its lienholder status or how a maritime lien may affect this appeal and its remedies.

The paramount issue is whether the debtor's prepetition oral undertaking constituted an effective assignment to the yard of its insurance claims, valid against the interests of the bankruptcy estate. Any question of appellant's right to relief from stay for proceeding against the insurance company has been mooted by turnover of the funds to the debtor in possession.

## STANDARD OF REVIEW

The panel's review concerns a question of law, and is therefore *de novo*. *E.g., Torrez v. Torrez (In re Torrez),* 63 B.R. 751, 753 (9th Cir. BAP 1986), *aff'd,* 827 F.2d 1299 (9th Cir.1987). No factual issues were presented.

## DISCUSSION

The debtor does not dispute that it communicated to the yard and underwriters its intention to transfer to the yard its rights to any insurance money with respect to the June, 1988, damage to the MIKI MIKI. It argues, as appellee, that its transfer was not effective in the absence of executed payment orders. It argues further that any completed transfer would be voidable under Code section 544(a), providing the trustee's strong arm powers, in the absence of documentation and perfection in compliance with the Uniform Commercial Code.

The payment orders were not necessary to effectuate the rights between the yard and the shipowner, which had already arrived at an understanding, but rather to protect the underwriters. Nor was a UCC financing statement required since Article 9 does not apply to "a transfer of an interest or claim in or under a policy of insurance, except with respect to proceeds (AS

§ 45.09.306)[4] and priorities in proceeds (AS § 45.09.312)."[5]   AS § 45.09.104(7)[6]; *see also, McKnight v. Rice, Hoppner, Brown & Brunner,* 678 P.2d 1330, 1334–35 & n. 7 (Alaska 1984) (under the version of the UCC adopted by Alaska, transfer of a claim under an insurance policy was not affected and remains governed instead by the common law).

No issue has arisen, concerning the insured's right or intent to transfer its insurance claim with respect to the June, 1988, damages to the yard. To effect the transfer by assignment, no particular formalities were required. Restatement (Second) of Contracts § 324 & comment a (1981). All that was needed was a manifestation orally or in writing of the debtor obligee's intention to transfer the right to another. *Id.* at § 324.

With assignment, the appellee/assignor's rights were fully extinguished so that if it later received proceeds of the assigned right it held them in constructive trust for the assignee. Restatement (Second) of Contracts, *supra,* § 341 comment a. Unless otherwise provided by statute, the assignee's right would be superior to even a subsequent judicial lienor. *Id.* § 341(1).

Because the insurance claim was effectively assigned before the case was filed, the estate lacked any interest under Code section 541. *Louisiana World Exposition, Inc. v. Federal Insurance Co. (In re Louisiana World Exposition, Inc.),* 832 F.2d 1391, 1401 (5th Cir.1987) (citing *In re Moskowitz,* 14 B.R. 677, 680–81 (Bankr.S.D.N.Y.1981); *In re Ivory,* 32 B.R. 788, 793–94 (Bankr.D.Or.1983); *In re Family & Industrial Medical Facilities, Inc.,* 25 B.R. 443, 450–51 (Bankr.E.D.Pa.1982)). When a purchaser of a policy assigns the proceeds

---

**4.** AS 45.09.306 concerns the definition of "proceeds" of collateral and scope of a security interest in proceeds.

**5.** AS 45.09.312 discusses priorities among conflicting security interests.

**6.** The exception to the exclusion applies to creditors with a security interest in collateral that is insured and its proceeds. Hawkland, Lord & Lewis, 8 UCC Series § 9–104:08 at 133–34 (1986) & 1987 Supp. at 27–28. The exclusion applies

when a debtor, either before or after the insured-against risk occurs, transfers rights under an insurance policy in order to obtain credit or to pay an existing creditor. *Id.* 132–33; *see also, Efraim Rosen, Inc. Tavormina (In re Armando Gerstel, Inc.),* 43 B.R. 925 (Bankr.S.D.Fla.1984), *aff'd,* 65 B.R. 602 (S.D.Fla.1986) (when goods that were not collateral were stolen and the debtor assigned the insurance proceeds to a creditor, the transfer was excluded from the coverage of Article 9).

elsewhere, the assignee owns the proceeds as opposed to the bankruptcy estate of the policy owner; the broad concepts of estate property and its proceeds under section 541 do not bring into the estate property that the debtor would not own if solvent. *Louisiana World Exposition*, 832 F.2d at 1401.

The yard's contention is correct that a constructive trust should be imposed on the insurance fund delivered to the debtor in possession. Bankruptcy courts may impose constructive trusts if justifiable under applicable state law. *In re Moskowitz*, 13 B.R. 357, 360–61 (Bankr.S.D.N.Y.1981). For the proposition that the bankruptcy court may impose a constructive trust only due to fraud, the debtor misplaced its reliance on the Ninth Circuit's decision in *Torres v. Eastlick (In re North American Coin and Currency, Ltd.)*, 767 F.2d 1573, 1575–76 (9th Cir.), *modified on other grounds*, 774 F.2d 1390 (9th Cir.1985), *cert. denied*, 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986); the creditors there relied solely upon allegations of fraud for imposing a constructive trust, but were unable to prove them. Under Alaska law, a constructive trust may be imposed against the holder of property that is being retained "by reason of unjust, unconscionable, or unlawful means." *McKnight*, 678 P.2d at 1335 (citing G. Bogert, *Trusts and Trustees*, § 471 at 3 (rev. 2d ed. 1978)). Not only is the debtor's claim irreconcilable with its prepetition assignment, but its use of the money at the expense of the yard was unwarranted. The estate has obtained the benefit of the repairs and seeks as well the insurance monies without paying for the yard's work, which is the condition of the insurer's obligation to pay.

## CONCLUSION AND ORDER

The debtor in possession as appellee has not justified its claim to the insurance proceeds, arising from the appellant's repair of the MIKI MIKI. It is undisputed that the insurance claim for the repairs was as-

---

**7.** Since we remand, we note that Code section 507(b) may be applicable. That section provides for a super priority administrative claim when a grant of adequate protection turns out to be inadequate. *Owens–Corning Fiberglas*

signed to the yard. Despite the lack of formalities, by virtue of the application of the common law instead of the Commercial Code, the transfer would have been effective against a subsequent lien creditor and is therefore effective against the estate. Accordingly, the order appealed is REVERSED and the case is REMANDED for the imposition of a constructive trust on the insurance fund in favor of the yard and further proceedings consistent with the panel's decision.[7]

*Corp. v. Center Wholesale, Inc. (In re Center Wholesale, Inc. II)*, 788 F.2d 541, 544 (9th Cir. 1986); *Owens–Corning Fiberglas Corp. v. Center Wholesale, Inc. (In re Center Wholesale, Inc. I)*, 759 F.2d 1440, 1451 (9th Cir.1985).