**In re GOLDEN TRIANGLE CAPITAL, INC., Debtor.**

**GOLDEN MORTGAGE FUND # 14, a joint venture, Appellant,**

v.

**James KENNEDY, Trustee of Golden Triangle Capital, Inc., Appellee.**

BAP No. SC–92–1545–AsVO.
Bankruptcy No. 91–05063–H7.
Adv. No. 91–90441–H7.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 17, 1993.

Decided July 28, 1994.

**80**

Jean M. Heinz, San Diego, CA, for appellant.

Gary B. Rudolph, San Diego, CA, for appellee.

Before ASHLAND, VOLINN and OLLASON, Bankruptcy Judges.

### OPINION

VOLINN, Bankruptcy Judge:

A lender allegedly presented a check to the debtor for the purpose of transferring the funds to the lender's borrower. Prior to consummation of the transfer, the debtor's bank accounts were seized and the debtor was placed in receivership. The lender appeals a summary judgment of the bankruptcy court that the funds became property of the estate.

## FACTS AND PROCEEDINGS BELOW

The debtor, Golden Triangle Capital, Inc. (Triangle), performed various real estate transaction functions. In the instant case, Triangle was to act as a loan servicing agent for a loan evidenced by a promissory note and secured by a deed of trust. In June of 1990, appellant Golden Mortgage Fund # 14, (Fund # 14) agreed to loan $95,000 to Camino Del Norte Partners II (Camino). Triangle would receive a fee to collect the loan payments from Camino and distribute them to Fund # 14. Triangle was also to act as an intermediary in the execution of the loan. Although Camino delivered a promissory note directly to Fund # 14, Fund # 14 was to transfer the loan amount to Camino through Triangle.

According to Fund # 14, the loan was funded on July 10, 1990, when a cashier's check for $95,000 was delivered to Robert Braun, the president of Triangle. A cashier's check dated July 6, 1990 was made payable to the order of Fund # 14's principal, Robert Brandt. Language on the face of the check states, "RE: FINDLEY." On the back of the check, Brandt indorsed it restrictively, "Pay to GTC/Findley." Findley was Camino's principal. Braun apparently deposited this check in one of Triangle's general accounts. The evidence presented is unclear whether this, in fact, occurred.

Fund # 14 asserts that Triangle deposited the $95,000 check in Triangle's general account in American Savings Bank. The Chapter 7 trustee of Triangle contends that there is no evidence that the $95,000 was deposited in a Triangle bank account. The evidence shows that a deposit was made in Triangle's American Savings Bank on July 6, 1990, which included a $95,000 deposit among various deposits totalling $102,345.80. The bank code for a $95,000 check deposited on the July 6 deposit slip indicates that the check was drawn on the same bank as Fund # 14's cashier's check. However, the declaration of Fund # 14's Robert Brandt states that he delivered the cashier's check to Triangle on July *10*, 1990 at 3:30 p.m.

It is undisputed that the parties intended that Triangle would transfer the $95,000 to Camino, minus a nominal service fee for act-

ing as transfer agent. However, on July 10, 1990, before the transfer occurred, the California Department of Real Estate and the FBI seized the funds in Triangle's bank accounts, including the $95,000 deposited on July 6.

The funds seized were turned over to a court-appointed receiver for Triangle. In March 1991, Fund # 14 filed a motion in the state court receivership proceedings for turnover of the $95,000 held by the receiver, alleging that the funds were not part of the receivership estate. After being informed that the receiver intended to file bankruptcy, the court denied Fund # 14's motion without prejudice to allow it to revive the motion in the bankruptcy court.

On May 7, 1991, Triangle filed its Chapter 7 bankruptcy petition. On June 24, 1991, Fund # 14 filed a complaint for declaratory relief in the bankruptcy court to determine entitlement to the funds. The Chapter 7 trustee brought a motion for summary judgment. The bankruptcy court requested additional briefing on whether the funds in question were held by the debtor in a resulting trust.

The court subsequently filed a memorandum decision which granted the trustee's summary judgment motion. The court determined that under California law, a resulting trust did not arise under the circumstances presented. Further, the court placed the burden on Fund # 14 to demonstrate that the equities favored imposition of a trust, and found that Fund # 14 failed to meet this burden. Judgment for the trustee was entered on May 11, 1992, and Fund # 14 filed a timely notice of appeal. We reverse.

## ISSUE PRESENTED

Whether the bankruptcy court erred by granting the trustee summary judgment on the basis that Triangle did not hold the funds in a resulting trust, and by requiring the claimant to demonstrate that the equities required imposition of a constructive trust.

## STANDARD OF REVIEW

█ The grant of summary judgment is reviewed *de novo*. *In re Sunset Bay Assoc.,* 944 F.2d 1503, 1508 (9th Cir.1991), citing *Kruso v. International Tel. & Tel. Corp.,* 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). "A summary judgment may be affirmed only if it appears, after reviewing all evidence and factual inferences in the light most favorable to the opposing party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *In re Southland + Keystone,* 132 B.R. 632, 637 (9th Cir. BAP 1991), quoting *In re Hyman,* 123 B.R. 342, 344 (9th Cir. BAP 1991), *aff'd,* 967 F.2d 1316 (9th Cir.1992).

## DISCUSSION

It is well-settled that property in the debtor's hands that belongs to another does not become property of the estate under § 541(a):

> Under subsection (b), property held by the debtor solely for the benefit of another does not constitute property of the estate. The legislative history to subsection (b) manifests Congressional concern that funds which the debtor holds in constructive trust for another should not be parceled out among the creditors:
>
> > Situations occasionally arise where property ostensibly belonging to the debtor will actually be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed.
>
> H.R.Rep. No. 595, 95th Cong., 2d Sess. 368 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6324.

*In re Minoco Group of Companies, Ltd.,* 799 F.2d 517, 519 (9th Cir.1986).

After submission of this appeal, the Ninth Circuit applied the above analysis to an allegedly preferential transfer. *In re Unicom,* 13 F.3d 321 (9th Cir.1994). *Unicom* analyzed whether funds that would be subject to imposition of a constructive trust under California

law are property of the estate pursuant to § 541(a) or are excluded therefrom by § 541(b)(1) and § 541(d), and answered clearly that such funds are not property of the estate for the purposes of preferential transfer analysis. Having reached this conclusion, *Unicom* then imposed on the debtor the burden to demonstrate that it would be inequitable to impose a constructive trust on the funds. *Id.* at 325. Thus, if property is excludable from the estate because of state constructive trust law, in order to assert control over the property, the debtor must demonstrate that bankruptcy's policy of ratable distribution outweighs the constructive trust beneficiary's right to the *res.*

▮▮▮ Under this rule, the distinction between a resulting trust and a constructive trust becomes important. A resulting trust is a trust implied by operation of law to enforce the inferred intent of the parties to establish a trust. A transaction that has failed to carry out the parties' intent becomes a resulting trust, and a resulting trust cannot be part of the debtor's estate. A constructive trust, on the other hand, is a remedy for circumstances where, although both legal and equitable title repose in one party, in equity the beneficial interest should belong to another. In the event that circumstances warrant the remedy of a constructive trust, however, this equitable remedy must be weighed against bankruptcy's equitable policy of ratable distribution, to which end the point in time when the remedy is imposed may become critical. Pursuant to *Unicom*, the debtor has the burden to demonstrate that ratable distribution outweighs the creditor's equitable remedy.

Cases have at times used the terms "constructive trust" and "resulting trust" interchangeably. Nevertheless, ignoring the label and focusing on the circumstances presented by the cases shows that courts follow a predictable rule.

▮▮▮ Determination of whether bankruptcy's policy of ratable distribution outweighs imposition of a trust depends on whether the trust arises out of intended ownership rights in the property or whether it is to be imposed as a remedy to correct a wrong. Analysis focuses on the legal relationship between the parties. If no debtor-creditor relationship exists, a trust will exclude property from the estate. This is the conclusion of *Unicom*, (property never intended for the debtor is not part of the estate); *In re Torrez*, 63 B.R. 751 (9th Cir. BAP 1986) (property held at all times in a resulting trust is not part of the estate); and *In re Anchorage Nautical Tours, Inc.*, 102 B.R. 741 (9th Cir. BAP 1989) (prepetition oral assignment of insurance proceeds effective against subsequent lienholders and bankruptcy estate).

If, on the other hand, the trust is imposed as a remedy for a claim, circumstances may warrant treating the claimant as any other creditor of the debtor, and thus subject to the policy of ratable distribution. This is the result in *In re Tleel*, 876 F.2d 769 (9th Cir. 1989) (inchoate trust remedy not superior to trustee's strong-arm power); *In re Bullion Reserve of North America*, 836 F.2d 1214 (9th Cir.1988), *cert. denied, Bozek v. Danning*, 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988) (transfer of funds to debtor in exchange for right to purchase bullion creates claim based on debtor-creditor relationship); *In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416 (9th Cir.1985) (inchoate remedy of constructive trust not superior to trustee's strong-arm and policy of ratable distribution); *In re North American Coin & Currency, Ltd.*, 767 F.2d 1573 (9th Cir.1985), *cert. denied, Daniel A. Torres, M.D., P.C. v. Eastlick*, 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986) (bankruptcy court will not impose remedy of constructive trust for creditors who are no differently situated than other creditors except for timing of the transaction); *In re Foam Systems Co.*, 92 B.R. 406 (9th Cir. BAP 1988), *affirmed*, 893 F.2d 1338 (9th Cir.1990) (where no trust, but rather a security transaction, was intended by the parties, a resulting trust will not be imposed to remedy defective perfection of the security interest).

▮▮▮ Turning now to the transaction at issue, it is apparent that the parties intended to enter into a brief relationship that must be characterized as an express trust. Under California law, the elements of a trust include "a competent trustor, an intention on the

part of the trustor to create a trust, a trustee, an estate conveyed to the trustee, and acceptance of the trust by the trustee, a beneficiary, a legal purpose, and a legal term." *In re Teichman,* 774 F.2d 1395, 1399 (9th Cir.1985) (citing *Reagh v. Kelley,* 10 Cal.App.3d 1082, 1089, 89 Cal.Rptr. 425 (1970)). Use or absence of the words "in trust" in a transaction is not conclusive to establish or deny the existence of a trust. *Petherbridge v. Prudential Sav. & Loan Ass'n,* 79 Cal.App.3d 509, 519, 145 Cal.Rptr. 87 (1978). In any event, the parties here have agreed that a trust was intended as the trustee does not dispute that only legal title was intended to pass to Triangle. The indorsement by Brandt on the cashier's check, "Pay to GTC/Findley" supports this intent. Thus for purposes of our analysis, it is clear that all elements of an express trust would have been present here, but for the intervention of the receivership, which prevented Triangle from the faithful performance of its trust obligation. Had an express trust been created, resort to the analysis of resulting and constructive trusts would be unnecessary, but it is useless to hypothesize whether the trust would have been faithfully performed but for the seizure of the funds by the California Department of Real Estate and the FBI.

It appears meaningless to determine whether, because of the interception of the receiver, an express trust failed, or whether the law should imply one. The property nevertheless should be excluded from the estate under § 541. As in *Unicom,* Golden Triangle cannot meet the burden of demonstrating the inequity of returning the property to the beneficiary. The debtor never had rights in the funds; the policy of ratable distribution is applied to deal equably among the debtor's creditors, and here, appellant never entered into a credit relationship with the debtor.

The facts in *Unicom* are somewhat distinguishable because in that case, the parties never intended to place the funds in the debtor's hands, while here, Triangle's receipt of the funds was intentional. This distinction is not relevant. It is undisputed that Triangle was intended to be a mere conduit for the funds.

When Triangle was put into receivership and ultimately into bankruptcy under Chapter 7, the funds never became property of the estate since Triangle was only a conduit for the funds; except for its nominal fee, the debtor never had rights in the funds; and the parties never intended Fund # 14 to enter into a creditor relationship with Triangle. "A receiver occupies no better position than that which was occupied by the party for whom he acts. 'He takes the property and rights of the one for whom he was appointed precisely in the same condition and subject to the same equities as existed before his appointment and any defense good against the original party is good against the receiver.'" *Downey v. Humphreys,* 102 Cal. App.2d 323, 336, 227 P.2d 484, 492–93 (1951) (quoting *People v. California Safe Deposit & Trust Co.,* 168 Cal. 241, 246, 141 P. 1181, 1183 (1914). "[T]he trustee is merely a successor in interest to the debtor and therefore he should take no greater interest in the property held by the debtor." *In re Santa Fe Adobe, Inc.,* 34 B.R. 774, 776 (9th Cir. BAP 1983) (citing *Wyle v. R.J. Reynolds Industries, Inc.,* 709 F.2d 585, 592 (9th Cir.1983)).

The effect of the trial court's ruling was to assign creditor status to appellant, who never extended credit to the debtor; the debtor served only as a conduit, and this neutral function was intercepted by the receiver before any possible kind of obligation could arise between the parties. There is no question of ownership or right to possession in this regard. Therefore, a determination whether appellant should be permitted to fare better than other creditors would be an illogical exercise.

The only arguable issue presented in this case is the traceability of the funds. There appears to be a possible controversy whether the $95,000 deposited on July 6, 1990 is in fact the $95,000 check allegedly presented on July 10, 1990. The trial court did not resolve this issue, finding resolution unnecessary for its analysis.

Therefore, these proceedings should be remanded for trial on the issue of identification of the property. In the event that the prop-

erty can be traced, the trial court should order the trustee to give it back to its owner.

## CONCLUSION

■ Traceable funds in which the debtor never acquired a beneficial interest do not become part of the bankruptcy estate. Property that has never become part of the estate need not be subject to the imposition of an equitable remedy, which must be balanced against the policy of ratable distribution.

REVERSED and REMANDED.

ASHLAND, Bankruptcy Judge, concurring:

I concur in the majority's result but for a different reason. The majority concludes that *In re Unicom Computer Corp.*, 13 F.3d 321 (9th Cir.1994), compels us to find that the funds held by Golden Triangle were not property of the estate. In *Unicom* the court imposed a constructive trust on funds mistakenly in the possession of the debtor. Initially the court placed the burden on the creditor to establish state court grounds for imposition of a constructive trust. Once established, the court switched the burden to the debtor to prove that it would be inequitable to impose a constructive trust in the context of the bankruptcy.

When a debtor holds complete control over funds, such that the funds are deposited in the debtor's general operating account or otherwise subject to attachment by executing lien creditors, the funds are presumed to be property of the estate. *See, In re Bullion Reserve of North America*, 836 F.2d 1214, 1217 (9th Cir.1988), *cert. denied, Bozek v. Danning*, 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988). A creditor has the burden to prove that funds in the debtor's possession should be held in trust for that creditor's benefit. *See, In re American International Airways, Inc.*, 44 B.R. 143, 146 (Bankr.E.D.Pa.1984). After the burden has been satisfied, then the debtor has the opportunity to establish that imposition of the constructive trust is inequitable in the bankruptcy context. *Unicom*, 13 F.3d at 325.

In this case, I am not convinced that Golden Mortgage satisfied its burden to show that a constructive trust was warranted under California law. A cashiers check was issued in the name of Robert Braun with no indication of his capacity in Golden Triangle. Upon cashing the check, the monies were not held in a separate account but deposited in a general account with other unrelated monies and approximately $20,000 was drawn from the account after deposit of the funds. The record is devoid of any writing indicating the terms of the transfer to Camino or the portion of the funds to be paid to Golden Triangle as a servicing fee. Until after the bankruptcy was filed, there was no indication by the actions of Golden Triangle or Golden Mortgage that a trust situation was intended.

For the same reasons, the transaction herein raises the question of whether imposition of a constructive trust in the bankruptcy context is inequitable. A further question is raised as to whether the funds were actually transferred by Golden Mortgage to Golden Triangle and what, if any, portion of those funds are traceable.

The majority's holding, in conjunction with *Unicom*, provides an avenue for abuse by conspiring debtors and creditors to contend, after the filing of a bankruptcy, that a trust situation was contemplated when the funds were transferred and in this way to prefer certain creditors over others. I believe that if it were Golden Mortgage's intent to give monies to Golden Triangle in trust for Camino, it could have protected itself in several ways, including setting up an escrow account in which to deposit the funds or creating an express trust.

The transaction herein raises many questions which should preclude summary adjudication. As a result I agree with the reversal and remand of the case, but for a different reason than expressed in the majority opinion.