In re MARKAIR, INC., an Alaskan Corporation; Markair Express, Inc., an Alaskan Corporation, Debtors.

AIRWORK CORPORATION, Appellant,

v.

MARKAIR EXPRESS, INC.; Markair, Inc., Creditors Committee of Markair, Inc., Creditors Committee of Markair Express, Inc., Safeco Credit Company, Inc., Appellees.

BAP No. AK–93–1539–JRO.
Bankruptcy Nos. A92–00476–HAR, A92–00477–HAR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 22, 1994.

Decided Aug. 29, 1994.

Harvey A. Strickon, New York City, for appellant.

Susan M. Freeman, Phoenix, AZ, for appellees.

Before JONES, RUSSELL and OLLASON, Bankruptcy Judges.

## OPINION

JONES, Bankruptcy Judge:

### OVERVIEW

Appellant Airwork Corp. repaired the debtor's damaged aircraft engine. The debtor moved the court to release to Airwork the insurance proceeds payable to the debtor for the loss. The unsecured creditors committee and Safeco, a secured creditor with an interest in both the engine and the insurance proceeds, resisted the motion. Airwork offered various theories to establish its sole rights to the proceeds, but the court, after concluding that Airwork had not established any basis for giving it an advantage over other unsecured creditors, ordered the funds released to the debtor. For the reasons set forth below, we affirm.

### FACTS AND PROCEEDINGS BELOW

On February 24, 1992, an aircraft owned by Markair, Inc. and leased to Markair Express, Inc. (collectively "Markair" or "the Debtor") was involved in a collision at Anchorage International Airport, resulting in damage to an engine. The debtor notified its insurance company of a loss. On March 10, 1992, the debtor shipped the damaged engine to appellant Airwork Corp. in Millville, New Jersey for repair. On May 21, after repairing and overhauling the engine, Airwork sent it to Rocky Mountain Aircraft in Calgary, Canada at the debtor's request. Rocky Mountain Aircraft installed the engine in another of the debtor's aircraft. Airwork billed the debtor $189,119.29, of which $158,673.50 was attributed to repair work. On June 8, 1992, the debtor filed for bankruptcy protection.

On July 8, while the engine was still in Rocky Mountain's possession, Airwork sent the debtor a reclamation notice and notice of assertion of lien under 11 U.S.C. § 546(b).[1] On August 8, Rocky Mountain delivered the craft with the installed engine to the debtor. The insurance proceeds remained in escrow with the debtor's insurance company.

On March 9, 1993, the debtor filed a motion seeking release of the insurance proceeds to Airwork. The motion was objected to by the unsecured creditors' committees of both debtor entities and by SAFECO. SAFECO had a perfected security interest in both aircraft and in any insurance proceeds relating to them. After a hearing, the bankruptcy court held that Airwork was not entitled to the proceeds. Airwork timely appealed. As SAFECO and the debtor were involved in a global settlement, and SAFECO was oversecured in any event, SAFECO relinquished all interest in the proceeds, and the court authorized release of the proceeds to the debtor.

### ISSUES PRESENTED

Airwork offered six theories as a basis for recovery:

1. A constructive trust should be imposed on the proceeds for Airwork's benefit;

2. Payment of the proceeds to SAFECO would result in unjust enrichment;

3. An equitable lien should be imposed on the proceeds for Airwork's benefit;

---

1. Unless otherwise stated, all references to "sections" refer to the Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

4. Airwork was entitled to the proceeds because it repaired the engine in reliance thereon;

5. Airwork possessed a valid reclamation claim with respect to installed engine parts;

6. Airwork had valid rights in the engine based on a mechanic's lien.

Airwork also contends that issues 5 and 6 were not before the court on a motion to release the proceeds and should not have been adjudicated.

## STANDARD OF REVIEW

■ Facts are not disputed. The case presents a mixed question of law and fact because the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule. *Pullman–Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66 (1982); *Moss v. Commission,* 831 F.2d 833, 838 n. 9 (9th Cir.1987); *United States v. McConney,* 728 F.2d 1195, 1200 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Mixed questions generally are reviewed *de novo* because they require the consideration of legal concepts and the exercise of judgment about the values that animate legal principles. *Boone v. United States,* 944 F.2d 1489, 1492 (9th Cir.1991); *United States v. Spillone,* 879 F.2d 514, 520 (9th Cir.1989), *cert. denied,* 498 U.S. 878, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990); *McConney,* 728 F.2d at 1204; *but see Assembly of the State of California v. Dept. of Commerce,* 968 F.2d 916, 919 (9th Cir. 1992) (deference is owed to district court's fact-based inquiries).

## DISCUSSION

*Airwork failed to establish a right to the res under its equitable theories.*

The trial court concluded that Airwork had no legal right to the insurance proceeds res under state law, and in the event that an equitable claim existed, the court had discretion to refuse to apply equitable state court remedies based on overriding bankruptcy concerns. We agree.

■ Analysis focuses on the legal relationship between the parties. If no debtor-creditor relationship exists or was intended, a trust will exclude property from the estate. *In re Unicom Computer Corp.,* 13 F.3d 321 (9th Cir.1994) (property never intended for the debtor is not part of the estate); *In re Torrez,* 63 B.R. 751 (9th Cir. BAP 1986) (property held at all times in a resulting trust is not part of the estate); and *In re Anchorage Nautical Tours, Inc.,* 102 B.R. 741 (9th Cir. BAP 1989) (prepetition oral assignment of insurance proceeds effective against subsequent lienholders and bankruptcy estate).

■ If, on the other hand, the law would impose a trust as a remedy, circumstances may warrant treating the claimant as any other creditor of the debtor, and thus subject to bankruptcy's policy of ratable distribution. This is the result of *In re Tleel,* 876 F.2d 769 (9th Cir.1989) (inchoate trust remedy not superior to trustee's strong-arm power); *In re Bullion Reserve of North America,* 836 F.2d 1214 (9th Cir.1988) (transfer of funds to debtor in exchange for right to purchase bullion creates claim based on debtor-creditor relationship); *In re Lewis W. Shurtleff, Inc.,* 778 F.2d 1416 (9th Cir.1985) (inchoate remedy of constructive trust not superior to the trustee's strong-arm powers and bankruptcy's policy of ratable distribution); *In re North American Coin & Currency, Ltd.,* 767 F.2d 1573 (9th Cir.1985) (bankruptcy court will not impose remedy of constructive trust for creditors who are no differently situated than other creditors except for timing of the transaction); *In re Foam Systems Co.,* 92 B.R. 406 (9th Cir. BAP 1988), *affirmed,* 893 F.2d 1338 (9th Cir.1989) (where no trust, but rather a security transaction, was intended by the parties, a resulting trust will not be imposed to remedy defective perfection of the security interest).

■ Although oftentimes the terms constructive trust and resulting trust are used together or interchangeably, the two concepts are distinct. A resulting trust arises by operation of law to enforce the inferred intention of the parties to the transaction. The existence of a resulting trust is established by circumstances showing that the

transferee was never intended to take beneficial interest through the transaction. *In re Foam Systems Co.*, 92 B.R. 406, 408 (9th Cir. BAP 1988). Once the trust is declared, the remedy is delivery of the res by the trustee to the beneficiary. A resulting trust can defeat the trustee's strong arm powers under § 544. The resulting trust having been determined by law to exist, the trustee has no equitable rights in the trust, and the res is not property of the estate pursuant to § 541.

On the other hand, a constructive trust is a remedy which is inchoate prior to its imposition. *In re North American Coin & Currency, Ltd.*, 767 F.2d 1573, 1575 (9th Cir.1985). Rather than being a determination of rights arising by law because of mistake or omission as is a resulting trust, a constructive trust is an equitable remedy. Unlike a resulting trust, "[a] constructive trust is not grounded in the intention of the parties, inferred or presumed; it is a remedial device of equity—a trust in invitum—to prevent unjust enrichment." *Moses v. Moses*, 140 N.J.Eq. 575, 53 A.2d 805 (N.J.1947). The distinction between resulting and constructive trusts may blur because, as an equitable remedy, a constructive trust remediates inequitable circumstances by imposing what the parties in equity *should* have intended.

While a constructive trust is a flexible remedy, "[w]e necessarily act very cautiously in exercising such a relatively undefined equitable power in favor of one group of creditors at the expense of other creditors...." *North American Coin*, 767 F.2d at 1575. Because it is a *remedy*, a constructive trust cannot affect rights in the res until it is imposed. A constructive trust imposed by state law pre-petition would therefore exclude the res from the debtor estate. If the remedy remains inchoate post-petition, however, it is subordinate to the trustee's strong arm power. *In re Tleel*, 876 F.2d 769, 771–72 (9th Cir.1989). The incipient beneficiary of a constructive trust has no rights greater than any other creditor of the debtor who has not reduced his claim to judgment and perfected it.

Airwork contends that it is entitled to either a constructive trust to the res or an equitable lien therein, because SAFECO and the debtor were unjustly enriched by retention of both the repaired engine and the insurance proceeds.[2] When a creditor can establish that it is entitled to a constructive trust remedy under state law, the burden shifts to the debtor of demonstrating that it would be inequitable as a matter of federal bankruptcy law to impose a constructive trust over those funds. *Unicom*, 13 F.3d at 325. Assuming *arguendo* that Airwork has established its state law rights, where a creditor can assert only that its rights in the res would arise solely on a debtor-creditor relationship, the debtor's burden can be established as a matter of law: the creditor has not established any basis to be placed ahead of other creditors of the estate. Airwork has not established that it is entitled to treatment different than any other creditor that extended credit to the debtor, other than the superficial appeal of the existence of the res.

Airwork did not plead and could not demonstrate a resulting trust under the facts: Airwork did not rely in any specific sense on payment from the proceeds, and the debtor did not indicate that payment to Airwork would be guaranteed therefrom. Airwork has attempted to graft the bankruptcy effect of the resulting trust onto its grounds for imposing a constructive trust. If a constructive trust would have been the proper state law remedy to prevent Markair's unjust retention of the res, that remedy was inchoate when the estate was formed, and the trustee, representing the creditors of the estate, may defeat its application pursuant to § 544(a). Therefore, the bankruptcy court was correct when it held that even if Airwork would have been entitled to the remedy of a constructive trust, the court could properly refuse to award one pursuant to overriding bankruptcy considerations. In effect, since the res is not retained by the debtor under these circumstances, but is ratably distributed to its creditors, no unjust enrichment is presented, and the basis for the remedy is dissipated.

**2.** SAFECO has since disclaimed any interest in   the proceeds.

Airwork raises a separate argument for its entitlement to an equitable lien. The significant distinction between an equitable lien and a constructive trust is that an equitable lien is applied in those instances where the claimant can establish only an equitable interest in the res, rather than a claim to title to the res. The court therefore did not need to make an extended analysis of this particular theory.

### Airwork did not rely on the insurance proceeds.

As to Airwork's reliance claim, Airwork can support the assertion that it relied on the res only in the sense that it expected that Markair had the ability to pay for its services, based on its implicit apprehension that Markair was insured. Airwork has not contended that it would have refused to perform the work if the debtor was not insured.

To the contrary, Airwork stated, "No one at Airwork can make an unqualified statement that he knew of the existence of the insurance and relied on the insurance in agreeing to do the repair work." ER 11 at 4–24 (citing letter from Airwork's counsel.) Thus Airwork's argument that it implicitly relied on the insurance proceeds is unpersuasive.[3] As the trial court noted, Airwork extended credit to the debtor, but did not request or receive assignment of the insurance proceeds. *Cf. In re Anchorage Nautical Tours, Inc.*, 102 B.R. 741 (9th Cir. BAP 1989) (holding a pre-petition agreement to assign insurance proceeds in exchange for repairs constituted an effective assignment, valid against interests of the debtor's estate). Airwork did the work with the foreseeable knowledge that the proceeds could have been applied elsewhere by the debtor.

### The trial court could properly dispose of Airwork's reclamation claim and mechanic's lien claim.

■■■ Airwork contends that it possessed a valid reclamation claim with respect to installed engine parts, and asserted rights in the engine based on a mechanic's lien. The

court ruled otherwise, and Airwork contends that these issues were not before the court and should not have been adjudicated.

These two claims were raised initially by the debtor in its motion for release of the proceeds to Airwork. The claims were opposed by the unsecured creditors and SAFECO. The claims were raised as support for Airwork's claim to a right to the insurance proceeds, as well as to establish direct rights in the engine or its components. In order to properly adjudicate Airwork's entitlement to the proceeds as they might be based on these asserted claims, the court necessarily had to consider whether the claims themselves were tenable. Having been put in play, both aspects of these claims were before the bankruptcy court and were argued by Airwork in its response to the objections and at the hearing. The claims arise out of a single transaction. Had they been not been raised, they would have been barred by the judgment, and res judicata would prevent Airwork from raising them subsequently.

An invitation to establish the facts surrounding these claims by submission of evidence was not pursued. The bankruptcy court was entitled to accept facts as admitted and any uncontested inferences that might lead from them. Rocky Mountain's release of the aircraft to the debtor one month after Airwork's reclamation claim indicates that it was not Airwork's agent. UCC § 2–702(2) states in part:

> Where a seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt....

The court determined that Rocky Mountain was the debtor's bailee, and consequently that Airwork's reclamation claim, coming some six weeks after releasing the engine to Rocky Mountain was untimely. Airwork's attempt to characterize Rocky Mountain as a carrier is unpersuasive and does not demonstrate that the trial court's finding was clearly erroneous.

---

**3.** For example, a wholesaler could reasonably assert that he expected to be paid out of the proceeds obtained by the retailer.

Airwork has not provided an argument as to its mechanic's lien claim except to assert it was not properly before the court.

## CONCLUSION

The bankruptcy court did not commit reversible error by denying Airwork an interest in the insurance proceeds. Airwork did not establish an interest entitling it to rights greater than other creditors who dealt with the debtor. Airwork's other claims based on the transaction merged with the judgment. For the reasons set forth above, we affirm.