In re CRS STEAM, INC., Debtor.

In re Thomas F. LeBLANC, Debtor.

CRS STEAM, INC. and Thomas F. LeBlanc, Plaintiffs,

v.

ENGINEERING RESOURCES, INC., Defendant.

Bankruptcy Nos. 97–44296–JFQ, 97–44297–JFQ. Adversary No. 97–4244.

United States Bankruptcy Court, D. Massachusetts.

Oct. 8, 1998.

Kevin C. McGee, Seder & Chandler, Worcester, MA, for Debtor.

## OPINION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

Does the right to receive property held by a debtor under "constructive trust" constitute a claim in bankruptcy which is assigned a dollar amount and denied any property interest? Does it make a difference that the trust has already been declared by a prepetition decree ordering transfer of the property? These are questions the courts have long ignored, for reasons explored here. But courts do recognize the tension existing between the exclusive nature of constructive trust rights and the bankruptcy policy favoring pro rata distribution among those holding similar rights.

Thomas F. LeBlanc ("LeBlanc") and CRS Steam, Inc. ("CRS"), chapter 11 debtors in possession, have brought suit to set aside as a preferential transfer the court-ordered assignment of patents which was made to Engineering Resources, Inc. ("ERI") within ninety days of the filing of their simultaneous chapter 11 petitions. ERI moves for summary judgment.

## I. FACTS

The facts are undisputed. ERI manufactures and sells steam valves for industrial and commercial use. Many years ago it developed an improved engineering system involving nozzles which remove condensate. In 1989, after working for ERI for almost two years, LeBlanc formed CRS Steam, Inc. to manufacture and sell condensate removal devices. CRS used technology based in part on two patents (the "patents") obtained by LeBlanc in his individual name, one on an "in-line device" and the other on a "radiator insert kit."

In 1994, ERI brought suit against LeBlanc and CRS in the United States District Court for the Northern District of Illinois. The case went to trial on two counts of the complaint—misappropriation of trade secrets under the Illinois Trade Secrets Act ("ITSA") and breach of LeBlanc's employment agreement with ERI. In his employment agreement LeBlanc promised not to use or disclose ERI's trade secrets. He also agreed that any inventions he conceived or reduced to practice within ninety days after termination of his employment would be the sole property of ERI. The agreement contains a clause stating it shall be governed by the laws of Illinois.

On December 13, 1996, a jury returned a verdict for ERI on both counts. The jury awarded ERI $1,000,000 in compensatory damages against both defendants, jointly and severally, plus punitive damages of $20,000 against CRS and $130,000 against LeBlanc. The compensatory damages related to all years through 1996.

ERI thereafter requested injunctive relief to prevent future use or disclosure of its trade secrets. It asked the court to enjoin the defendants from further conduct in violation of either ITSA or the employment agreement. ERI also sought a mandatory injunction requiring them to assign to ERI all their right, title and interest in the patents.

On April 29, 1997, the district court granted the requested injunctive relief, including a mandatory injunction ordering LeBlanc and

CRS to assign the patents. It did so after concluding that the jury found LeBlanc had misappropriated the designs encompassed within the patents. CRS and LeBlanc appealed, but obtained no stay of the injunction. On May 22, 1997, LeBlanc executed and delivered to ERI an assignment of the patents for a stated consideration of $1.00. On June 19, 1997, within ninety days of both the court order and the assignment, ERI and LeBlanc each filed a chapter 11 petition with this court. They have remained as debtors in possession. On April 28, 1998, in a four page unpublished order, the Court of Appeals for the Seventh Circuit affirmed the monetary judgment and injunction. ERI thereafter filed the present motion for summary judgment.

Though it did not expressly say so, the district court issued the mandatory injunction under constructive trust principles. The court said LeBlanc "misappropriated" the designs encompassed by the patents and "breached his contract with ERI by not disclosing [them] to ERI." In ordering the patent assignment, the district court obviously intended to prevent unjust enrichment, the traditional basis for imposing a constructive trust. The Seventh Circuit thought so too, describing the district court's decision in these words: "The district court ... held that defendants were unjustly enriched as a result of using ERI's trade secrets...."

## II. QUESTIONS PRESENTED

ERI contends that because of a pre-existing constructive trust the patent assignment involved no "transfer of an interest of the debtor in property" within the meaning of

the preference section.[1] The more basic issue, however, is this: Even if a transfer of a beneficial property interest did occur, does the continuing existence of a constructive trust by force of the court decree mean that no preference took place because the transfer did not enable ERI to receive more than it would receive if the case were under chapter 7 and the transfer had not been made? [2] In other words, absent the patent assignment, would ERI still be entitled to the patents as the beneficiary of a constructive trust? If ERI's constructive trust rights do not constitute a "claim," ERI would still be entitled to the patents under the decree. I deal first with that issue.

## III. CONSTRUCTIVE TRUST RIGHTS AS A CLAIM

### A. Nature of Constructive Trust Rights Under State Law

A constructive trust is a remedial device employed by courts to prevent unjust enrichment.[3] Transfers induced by fraud, mistake, duress or undue influence, and acquisitions of property through violation of a fiduciary duty, are the principal examples of circumstances giving rise to a constructive trust.[4] Constructive trusts are quite common in the branch of the law known as "restitution." Although restitution and contracts are different areas of law,[5] courts occasionally employ constructive trusts as a remedy for breach of contract.[6] They do so when the benefit derived by the party in default exceeds the other's loss.[7]

1. See 11 U.S.C. § 547(b) (1994).

2. Section 547(b)(2) requires that the transfer be one that enables such creditor to receive more than such creditor would receive if—

 (A) the case were a case under chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547(b)(5) (1994).

3. See 1 GEORGE PALMER, THE LAW OF RESTITUTION §§ 1.3, 1.4 (1978); 5 AUSTIN WAKEMAN SCOTT & WILLIAM FRANKLIN FRATCHER, THE LAW OF TRUSTS AND

TRUSTEES §§ 461, 462 (4th ed.1989); RESTATEMENT OF RESTITUTION § 160 cmt. a (1937).

4. See RESTATEMENT OF RESTITUTION §§ 160, 163–69 (1937).

5. See Andrew Kull, Rationalizing Restitution, 83 CAL.L.REV. 1191 (1995) (urging that distinction between the two areas of law be maintained to preserve soundness of analysis).

6. See Christopher T. Wonnell, Replacing the Unitary Principle of Unjust Enrichment, 45 EMORY L.J. 153 (1996).

7. See id.

The *Restatement of Restitution* contains this discussion of the constructive trust concept:

> The term "constructive trust" is not altogether a felicitous one. It might be thought to suggest the idea that it is a fiduciary relation similar to an express trust, whereas it is in fact something quite different from an express trust. An express trust and a constructive trust are not divisions of the same fundamental concept. They are not species of the same genus. They are distinct concepts. A constructive trust does not, like an express trust, arise because of a manifestation of an intention to create it, but it is imposed as a remedy to prevent unjust enrichment. A constructive trust, unlike an express trust, is not a fiduciary relation, although the circumstances which give rise to a constructive trust may or may not involve a fiduciary relation.
>
> It is true that both in the case of an express trust and in that of a constructive trust one person holds the title to property subject to an equitable duty to hold the property for or to convey it to another, and the latter has in each case some kind of an equitable interest in the property. In other respects, however, there is little resemblance between the two relationships....[8]

Because a constructive trust is imposed as a remedy to prevent unjust enrichment, the trust terminology is a "fiction of equity."[9] "The court must give expression to the idea that the defendant has been under a duty to give the complainant the benefit of the property ever since the defendant began to hold unjustly, by holding that the defendant has since the inception been in the same position as if he had been an express trustee of the property."[10] This facilitates giving the complainant priority over creditors of the defendant who acquire judicial liens prior to issuance of the court decree declaring a constructive trust.[11] But there is really no "trust" at all, in the proper sense of the term. Rather than seeking to establish an equitable interest, the party requesting ownership of the property wants to. enforce an equitable right to a legal interest.[12] He may elect between obtaining the property itself or a money judgment for its value.[13]

There is disagreement on the nature of the claimant's rights in the property prior to its transfer to him. Although conceding that a constructive trust is merely a remedy and thus quite different from a true trust, the *Restatement* nevertheless observes that the constructive trust claimant has "some kind of an equitable interest in the property."[14] Scott agrees. He believes the trust exists from the time the "trustee" acquires the property. He likens the equitable property rights of the claimant to those of a purchaser under a contract which is specifically enforceable.[15] Recognizing that the question is "difficult," Scott believes the existence of such an interest is supported by the priority which the beneficiary enjoys over intervening judicial creditors and transferees who are not bona fide purchasers for value.[16] Bogert has a different view as to when the trust arises. Stressing the fictional nature of the trust and the beneficiary's right to elect to receive either the property or its value, he thinks no trust arises until entry of a decree ordering the transfer.[17] He expresses no

**8.** Restatement of Restitution § 160 cmt. a (1937).

**9.** *See* George Glenn Bogert & George Taylor Bogert, The Law of Trusts and Trustees § 471 (Rev.2d ed.1978).

**10.** *See id.*

**11.** *See id.*

**12.** *See* Herbert Thorndyke Tiffany, The Law of Property § 274 (3d ed.1939).

**13.** *See* George Glenn Bogert & George Taylor Bogert, The Law of Trusts and Trustees § 472 (Rev.2d ed.1978).

**14.** *See* Restatement of Restitution § 160 cmt. a (1937).

**15.** *See* 5 Austin Wakeman Scott & William Franklin Fratcher, The Law of Trusts and Trustees § 462 (4th ed.1989).

**16.** *See id.* § 462.4.

**17.** *See* George Glenn Bogert & George Taylor Bogert, The Law of Trusts and Trustees § 472 (Rev.2d ed.1978).

opinion on whether the beneficiary has a property interest thereafter. Under Illinois law, which governs the employment agreement here, no trust exists until entry of the decree.[18] Many other courts apply the fiction to its full extent and rule that the trust exists from the time of the property's acquisition by the "trustee." [19]

## B. *Bankruptcy Case Law*

 Parties claiming constructive trust rights against a debtor in bankruptcy have succeeded or failed depending largely upon the state law priority rights which the estate representative asserts.[20] Under general state law, the beneficiary of a constructive trust has priority over creditors of the constructive trustee holding judicial liens.[21] If the estate representative asserts only judicial lien rights, as he must under section 544(a) if personal property is involved, the estate fares no better than do judicial lien creditors outside of bankruptcy.[22] But state law is kinder to a bona fide purchaser for value. That party enjoys priority over the beneficiary of a constructive trust.[23] Unlike a judicial lien creditor, who extends unsecured credit prior to obtaining his lien, a bona fide purchaser relies upon the constructive trustee's ownership in parting with his money. If the property is real property, the estate representative usually wins because he can assert the rights of a bona fide purchaser pursuant to section 544(a)(3).[24] Occasionally the estate representative fails to employ his strong arm powers; the constructive trust beneficiary then prevails.[25] The constructive trust beneficiary must, however, trace the property to the bankruptcy estate under the tracing rules applicable to traditional trusts.[26] A court sometimes applies constructive trust principles against the estate when the parties intended to create a trust and thus a true trust was present.[27]

**18.** *See Suttles v. Vogel*, 126 Ill.2d 186, 127 Ill. Dec. 819, 533 N.E.2d 901, 904 (1988).

**19.** *See, e.g., Meyer v. Kneip*, 457 N.W.2d 463, 467 (S.D.1990); *Klein v. Shaw*, 109 Idaho 237, 706 P.2d 1348, 1351 (1985); *Pioneer Annuity Life Ins. Co. v. National Equity Life Ins. Co.*, 159 Ariz. 148, 765 P.2d 550 (1988).

**20.** *See* Alan G. Skutt, Annotation, *Power of Trustee in Bankruptcy to Defeat Rights of Beneficiary of Constructive Trust Under § 544(a) of Bankruptcy Code* (11 U.S.C.A. § 544(a)), 96 A.L.R. Fed. 100 (1990).

**21.** *See* RESTATEMENT OF RESTITUTION § 160 cmt. f, § 173 cmt. j (1937).

**22.** *See, e.g., City Nat'l Bank v. General Coffee Corp. (In re General Coffee Corp.)*, 828 F.2d 699 (11th Cir.1987), *cert. denied*, 485 U.S. 1007, 108 S.Ct. 1470, 99·L.Ed.2d 699 (1988); *N.S. Garrott & Sons v. Union Planters Nat'l Bank (In re N.S. Garrott & Sons)*, 772 F.2d 462 (8th Cir.1985); *Vineyard v. McKenzie (In re Quality Holstein Leasing, Inc.)*, 752 F.2d 1009 (5th Cir.1985).

**23.** *See* RESTATEMENT OF RESTITUTION § 160 cmt. g, § 173 cmt. j (1937); 5 AUSTIN WAKEMAN SCOTT & WILLIAM FRANKLIN FRATCHER, THE LAW OF TRUSTS AND TRUSTEES § 462.4 (4th ed.1989).

**24.** *See* 11 U.S.C. § 544(a)(3) (1994); *National Bank, N.A. v. Erickson (In re Seaway Express Corp.)*, 912 F.2d 1125 (9th Cir.1990); *Belisle v. Plunkett*, 877 F.2d 512 (7th Cir.), *cert. denied*, 493 U.S. 893, 110 S.Ct. 241, 107 L.Ed.2d 191 (1989); *Chbat v. Tleel (In re Tleel)*, 876 F.2d 769 (9th Cir.1989). *But see, Mills v. Brown (In re Brown)*, 182 B.R. 778 (Bankr.E.D.Tenn.1995) (stating trustee's bona fide purchase rights only apply to transfers by debtor and not property acquired by debtor); *In re Mill Concepts Corp.*, 123 B.R. 938 (Bankr.D.Mass.1991) (same).

**25.** *See, e.g., Chiu v. Wong*, 16 F.3d 306 (8th Cir.1994) (tracing proceeds of converted property into debtor's homestead and transferring homestead to constructive trust beneficiary); *Official Comm. of Unsecured Creditors v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 997 F.2d 1039 (3d Cir.1993) (deeming refunds due utility's customers under federal law held in constructive trust without discussion of strong arm powers); *Sosne v. Gant (In re Gant)*, 178 B.R. 169 (Bankr.E.D.Mo.1995) (denying trustee's motion to sell real property by reason of existence of constructive trust with no discussions of trustee's priority as bona fide purchaser); *But see In re United Imports, Inc.*, 203 B.R. 162 (Bankr.D.Neb. 1996) (recognizing principles of constructive trust but denying beneficiary relief from stay to enforce constructive trust in personal property without mention of beneficiary's priority over judicial lien creditor).

**26.** *See, e.g., Taylor Assocs. v. Diamant (In re Advent Management Corp.)*, 104 F.3d 293 (9th Cir.1997); *Connecticut Gen. Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612 (1st Cir.1988).

**27.** *See, e.g., Mid–Atlantic Supply, Inc. v. Three Rivers Aluminum Co. (In re Mid–Atlantic Supply, Inc.)*, 790 F.2d 1121 (4th Cir.1986) (check jointly payable to debtor and another pursuant to agreement of parties); *Old Republic Nat'l Title Ins. Co.*

For the most part, these bankruptcy decisions uncritically adopt the trust fiction. They treat the claimant's rights as equitable property interests which remain outside the bankruptcy estate pursuant to section 541(d) unless brought into the estate by the representative's section 544(a) strong arm powers. The writers also endorse recognition in bankruptcy of an equitable property interest belonging to the constructive trust claimant.[28]

Many courts nonetheless recognize the tension that exists between the state law principle of constructive trust, which benefits just one party, and the bankruptcy principle favoring general equality among those having similar rights. As a result, there is a strain of uneasiness in the decisions.[29] Although not flatly rejecting constructive trust principles in bankruptcy, these courts apply the principles strictly.

Some of the recent decisions display more than a sense of uneasiness with application of constructive trust principles in bankruptcy. They refuse to impose a constructive trust, at least in the absence of a prepetition decree.[30]

v. Tyler (In re Dameron), 206 B.R. 394 (Bankr. E.D.Va.1997), aff'd, 155 F.3d 718, 1998 WL 655691 (4th Cir.1998) (imposing constructive trust upon funds handled by disbursing agent which were subject to express agreement).

**28.** See, e.g., Carlos J. Cuevas, Bankruptcy Code Section 544(a) and Constructive Trusts: The Trustee's Strong Arm Powers Should Prevail, 21 Seton Hall L.Rev. 678 (1991) (favoring trustee even when trustee asserts judicial lien creditor rights, but limiting discussion to equitable liens consisting of unperfected security interests); Jeffrey Davis, Equitable Liens and Constructive Trusts in Bankruptcy: Judicial Values and the Limits of Bankruptcy Distribution Policy, 41 Fla. L.Rev. 1 (1989) (suggesting Code amendments that would enable estate representative to avoid most constructive trusts); Thomas H. Jackson, Statutory Liens and Constructive Trusts in Bankruptcy: Undoing the Confusion, 61 Am.Bankr.L.J. 287 (1987) (favoring constructive trust beneficiary without discussing estate representative's avoiding powers).

**29.** See, e.g., Shubert v. Jeter (In re Jeter), 73 F.3d 205 (8th Cir.1996) (approving denial of constructive trust based on equality considerations as well as strong arm powers); Southmark Corp. v. Grosz (In re Southmark Corp.), 49 F.3d 1111 (5th Cir.1995) (rejecting existence of constructive trust on facts and observing that remedy should not be cavalierly imposed in bankruptcy); Haber Oil Co., Inc. v. Swinehart (In re Haber Oil Co., Inc), 12 F.3d 426 (5th Cir.1994) (emphasizing policy of ratable distribution among creditors and denying beneficiary's claim because of procedural deficiencies and failure to establish debtor's fraudulent intent in not performing contract); Chbat v. Tleel (In re Tleel), 876 F.2d 769, 771 (9th Cir.1989) (declining to decide whether constructive trust remedy conflicts with Code and ruling in favor of trustee as bona fide purchaser); Elliott v. Frontier Properties/LP (In re Lewis W. Shurtleff, Inc.), 778 F.2d 1416 (9th Cir.1985) (remanding for addition fact finding on preference claim and observing that in absence of court decree constructive trust beneficiary's rights are inchoate at best); Torres v. Eastlick (In re North Am. Coin & Currency, Ltd.), 767 F.2d 1573, 1575 (9th Cir.1985), cert. denied, 475 U.S.

1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986) (finding insufficient fraud and stating: "[W]e cannot accept the proposition that the bankruptcy estate is automatically deprived of any funds that state law might find subject to a constructive trust."); Sholer v. Carmichael (In re PKR, P.C.), 220 B.R. 114 (10th Cir. BAP 1998) (noting conflict with bankruptcy policy and declining on facts to impose constructive trust); Airwork Corp. v. Markair Express, Inc. (In re Markair Express, Inc.), 172 B.R. 638, 642 (9th Cir. BAP 1994) ("Because it is a remedy, a constructive trust cannot affect rights in the res until it is imposed."); Golden Mortgage Fund # 14 v. Kennedy (In re Golden Triangle Capital, Inc.), 171 B.R. 79, 82 (9th Cir. BAP 1994) ("Determination of whether bankruptcy policy of ratable distribution outweighs imposition of constructive trust depends on whether the trust arises out of intended ownership rights in the property or whether it is to be imposed as a remedy to correct wrong."); Mullins v. Paul J. Paradise & Assocs., Inc. (In re Paul J. Paradise & Assocs., Inc.), 217 B.R. 452 (Bankr.D.Del.1997) (observing that estate's bona fide purchaser rights preserve Code's scheme of pro rata distribution); Berger, Shapiro & Davis, P.A. v. Haeling (In re Foos), 183 B.R. 149 (Bankr. N.D.Ill.1995) (stating constructive trust, being a remedy only, not favored in bankruptcy); Allen–Bradley Co., Inc. v. Commodore Bus. Machs., Inc. (In re Commodore Bus. Machs., Inc.), 180 B.R. 72 (Bankr.S.D.N.Y.1995) (denying constructive trust on facts and observing denial furthers Code's goal of equality among creditors); Skilled Nursing Prof'l Servs. v. Sacred Heart Hosp. (In re Sacred Heart Hosp.), 175 B.R. 543 (Bankr. E.D.Pa.1994) (denying constructive remedy on facts and expressing disinclination to allow creditors to use constructive trust remedy as a means of obtaining preference); Research–Planning, Inc. v. Segal (In re First Capital Mortgage Loan Corp.), 60 B.R. 915, 918 (Bankr.D.Utah 1986) ("[I]n dealing with fraud-based applications of the constructive trust doctrine, the court must be mindful of the basic bankruptcy policy of treating general creditors equally.").

**30.** See, e.g., XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.), 16 F.3d 1443 (6th Cir.

They do so on bankruptcy policy grounds, without regard to whether the facts would justify a constructive trust under state law. The best known of this genre is the Sixth Circuit's decision in *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.).*[31] Calling the trust terminology a "legal fiction," the court recognized constructive trust for what it is—a mere remedy.[32] Because of the bankruptcy policy favoring pro rata distribution, the court declined to apply state law, stating: "[J]ust because something is so under state law does not necessarily make it so under the Bankruptcy Code."[33] The court denied the claimant relief, concluding that the request for imposition of a constructive trust was merely a "claim," but without discussing the statutory definition of "claim."

The *Omegas* court cited a law review article written by Professor Sherwin,[34] which contains much original thinking on the unique equitable considerations present when a constructive trust claim is made in bankruptcy. Professor Sherwin favors the constructive trust beneficiary only when three factors are present: the beneficiary is an involuntary (noncontractual) creditor, the claim has special appeal because of unjust enrichment of the bankruptcy estate and assets representing the estate's unjust enrichment are identified. She observes that a constructive trust claim in bankruptcy involves special considerations because the contest is between the claimant and not the debtor but creditors who often go largely unpaid. Here again, however, there is no discussion of the statutory definition of "claim."

## C. *Code's Definition of "Claim"*

The Bankruptcy Code defines "claim" as follows:

"claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[35]

■ ERI's constructive trust rights fit quite well into subsection (B) of this definition. As we have seen, a constructive trust is merely an equitable remedy for unjust enrichment, not a trust at all. The Code's requirement that the remedy be for "breach of performance" is met here. The injunction mandating the patent assignment was based upon the jury's finding that LeBlanc had both breached his employment agreement and committed a violation of ITSA. The ITSA violation, in the words of the statute, was a "misappropriation" of a "trade secret" by "improper means" consisting of "breach of a confidential relationship or other duty to maintain secrecy...."[36] The "confidential relationship" or "duty" arose from LeBlanc's obligations under his employment agreement. There would be a "breach of performance" even if ITSA did not speak in terms of "breach" and the injunction was grounded solely upon the ITSA violation. In *Ohio v. Kovacs,*[37] the Supreme Court held that the violation of a statute constitutes "breach of performance" within the meaning of the statutory definition.

There is breach of performance under the definition only "if such breach gives rise to a

---

1994); *Kunkel v. Ries (In re Morkan),* 199 B.R. 940, 964–66 (Bankr.D.Minn.1996); *In re Dow Corning Corp.,* 192 B.R. 428 (Bankr.E.D.Mich. 1996).

**31.** 16 F.3d 1443 (6th Cir.1994).

**32.** *See id.* at 1449.

**33.** *See id.* at 1450.

**34.** *See* Emily L. Sherwin, *Constructive Trusts in Bankruptcy,* 1989 U.ILL.L.REV. 297 (1989).

**35.** 11 U.S.C. § 101(5) (1994).

**36.** Illinois Trade Secrets Act § 2, 765 ILCS 1065/1.

**37.** 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985).

right to payment...." [38] Legislative history explains: "This is intended to cause the liquidation or estimation of contingent rights of payment for which there may be an alternative equitable remedy with the result that the equitable remedy will be susceptible to being discharged in bankruptcy." [39] An equitable remedy, in other words, is a "claim" if it is an alternative to a right to payment. This requirement certainly makes sense. When it is present, the court can compute the "payment" due and thereby assign a dollar amount to the remedy, treating it like any other claim. That can be done here. Instead of obtaining the injunction mandating the patent assignment, ERI could have elected to receive a monetary judgment for the value of the patents. If LeBlanc is correct in his value estimation, this would have meant a judgment for $372,000.

The question whether equitable rights are a claim in bankruptcy has arisen in cases involving injunctive rights under covenants not to compete. Some of these decisions hold there is no "claim" present because, under *Ohio v. Kovacs*, compliance with the injunction must involve an expenditure of funds.[40] *Ohio v. Kovacs* makes no such distortion of the statutory requirement for an alternative right to payment. The State of Ohio had there obtained a mandatory injunction requiring Kovacs to conduct an environmental cleanup, and it had commenced the cleanup itself because Kovacs was unable to do so. It was looking for reimbursement from Kovacs for its cleanup costs incurred to date when Kovacs filed for bankruptcy. This factual background presumably helped persuade the Court that a dollar amount could be assigned to the injunction. But the Court imposed no condition that compliance with the injunction require an expenditure of

funds or that the holder of injunctive rights be seeking monetary relief.

Some other bankruptcy decisions on injunctive rights under covenants not to compete rule the covenant involves no "right to payment," and hence there is no "claim," because injunctive rights require that the remedy at law be inadequate, equating inadequacy of monetary relief with its nonexistence.[41] I have previously rejected this view, holding that such injunctive rights are a claim because of the presence of an alternative right to damages from the future competition that would take place in the absence of an injunction.[42] Courts can and do award damages for likely future competition in the rare case where the plaintiff wants a money judgment rather than more effective equitable relief.[43] In the present case, the question of the existence of an alternative right to damages is simpler. ERI could have obviously elected to obtain a monetary judgment for the value of the patents.

Where the usual alternative right to payment exists, a claim is present even though, as here, an injunction has already issued. The statute says an equitable remedy is a claim "whether or not such right to an equitable remedy is reduced to judgment...." [44] *Ohio v. Kovacs* recognized this in declaring the mandatory injunction before the Court there to be a claim. Treating an injunction as a claim is consistent with the inclusion of monetary judgments as claims under subparagraph (A) of section 101(5).

The *Omegas* court, in dictum, thought the existence of a prior court decree might make a difference. Although it regarded a constructive trust as a "legal fiction," [45] it inconsistently had this to say: "We do not address here property already impressed with a constructive trust by a court in a separate proceeding prepetition, in which case the claim-

---

**38.** 11 U.S.C. § 101(5) (1994).

**39.** 124 Cong.Rec. H11090 (daily ed. Sept. 28, 1978); S17406 (daily ed. Oct. 6, 1978) (statements of Rep. Edwards and Sen. DeConcini).

**40.** *See Maids Int'l, Inc. v. Ward (In re Ward)*, 194 B.R. 703, 710 (Bankr.D.Mass.1996) (discussing these decisions and rejecting their requirement for expenditure of funds).

**41.** *See id.* at 710–14 (discussing and disagreeing with these decisions).

**42.** *See id.*

**43.** *See id.*

**44.** 11 U.S.C. § 101(5) (1994).

**45.** *Omegas*, 16 F.3d at 1449.

ant would be entitled to priority (although not super priority to the trustee) as a secured creditor by virtue of the judgment. *See* 11 U.S.C. § 506." This off-hand statement of law, on a point which the court says it is not addressing, is simply wrong. A constructive trust consists of equitable rights to ownership, not a secured claim. Section 506 deals only with secured claims and says nothing about equitable rights.[46] Section 101(5), which the *Omegas* court unfortunately ignored, expressly deals with equitable rights.

Treating a court decree as a claim does not make bankruptcy a refuge for rascals. Wrongdoers do not get off scot-free. There is no discharge of debt if the claim represented by the decree is the indebtedness of an individual resulting from conduct deemed sufficiently reprehensible to be included among those debts declared nondischargeable by section 523. For example, an injunction ordering the transfer of property to remedy a conversion is equivalent to a monetary judgment for conversion. This is excepted from discharge as a debt "for willful and malicious injury by the debtor ... to the property of another entity."[47] That may well be the case here, but the question is not before me.[48]

Surprisingly, with one exception, none of the courts or writers addressing the consequences of constructive trusts in bankruptcy has so much as discussed the definition of "claim." This is apparently the result of a concentration upon the interplay between section 541(d) excluding equitable interests from the bankruptcy estate and section 544(a) granting the trustee powers to bring property into the estate. The exception comes from an unexpected source—Scott. Although Scott believes a constructive trust gives the beneficiary an equitable property

interest,[49] he concedes that the constructive trust remedy is a "claim" under the Code's broad definition of the term.[50]

There is nothing inconsistent with the foregoing in the holding of the court of appeals of this circuit in *Connecticut General Life Insurance Co. v. Universal Insurance Co.*[51] The court there denied a constructive trust claim in bankruptcy because the claimant was unable to trace the property which was supposedly subject to the trust.[52] In doing so the court observed that a bankruptcy estate is subject to the interests of beneficiaries in "property impressed with a trust— express or constructive."[53] The statement was unnecessary to the court's holding and is therefore dictum. Moreover, the decision contains no discussion of the problems which virtually all courts now recognize as stemming from constructive trust claims in bankruptcy. Apparently, the estate representative argued only the tracing issue.

ERI's rights under the mandatory injunction are therefore a claim in an amount to be established by the court. Although this is required by the statutory definition of "claim," there is more involved here than the literal interpretation of a statute. The result squares with the central bankruptcy policy of equality. It also reflects the reality of bankruptcy. The ermine robe of unjust enrichment is hardly a fitting adornment for creditors who are typically paid a pittance on their claims. And giving the constructive trust beneficiary an unsecured claim is not harsh in the context of bankruptcy. It is much like the treatment accorded a credit seller of goods, who is denied the return of his property and left with only a claim for its price.

### D. *Absence of Property Interest*

■ If the patent assignment had not occurred, the monetary amount that would be

---

46. *See* 11 U.S.C. § 506 (1994).

47. 11 U.S.C. § 523(a)(6); *see also In re Cecchini,* 780 F.2d 1440 (9th Cir.1986) (stating conversion of funds with intent to injure falls under § 523(a)(6)).

48. It is also arguable that what occurred here is in essence a breach of contract, so that the claim should be discharged.

49. *See* 5 Austin Wakeman Scott & William Franklin Fratcher, The Law Of Trusts and Trustees §§ 462, 462.4 (4th ed.1989).

50. *See id.* § 481.2.

51. 838 F.2d 612 (1st Cir.1988).

52. *See id.* at 618–20.

53. *See id.* at 618.

assigned to ERI's constructive trust rights would constitute an alternative to ERI's equitable right to receive an assignment of the patents. That means ERI would hold no property interest in the patents if no prepetition transfer had been made.

This does no violence to ERI's property rights under state law. As we have seen, the asserted property interest is pure fiction. Adopting the fiction, the best description the *Restatement* can muster is that it is "some kind of an equitable interest in the property." [54] Scott concedes that the question of the existence of a property interest is "difficult." [55] He concludes there is a property interest for two reasons: (i) the beneficiary's ability to obtain the property even though the "trustee" is insolvent, (ii) the beneficiary's priority over a transferee who is not a bona fide purchaser for value. [56] Scott's reasoning concerning insolvency is undercut by a passage in another section of his treatise, apparently written later, opining that the remedy of constructive trust is a claim under the Code's definition of the term. [57] The priority rights enjoyed over judicial lien creditors, moreover, do not equate to an interest in property, particularly in view of the reverse priority enjoyed by a bona fide purchaser for value.

Scott analogizes the constructive trust beneficiary's equitable rights to those of a buyer under a specifically enforceable contract, who is considered an equitable owner pursuant to the doctrine of equitable conversion by contract. [58] That doctrine, however, is a relic of the past whose sun has largely set. [59] It does not prevent the rejection of such a contract from resulting in a claim. [60] The doctrine is an application of the equitable maximum which regards as done that which should be done. [61] The writers are highly critical of the doctrine. One calls it a "grand non sequitur" which disregards the reality that the contract has not been performed. [62] Although the doctrine was in full sway during the nineteenth century, today most courts and legislatures reject it. [63] Illinois has joined in this movement. It has adopted the Uniform Vendor and Purchaser Risk Act, which places risk of loss upon the seller of real estate when neither possession nor legal title has been transferred. [64]

The Supreme Court of Illinois has passed on the very question involved here—whether a party entitled to the remedy of constructive trust holds a property interest. And it has done so in the context of an insolvency proceeding. In *Washburn v. Dyson (In re Security Casualty Co.)*, [65] claiming that they had been defrauded, shareholders of an insurance company in state court receivership obtained a monetary judgment in federal district court. They then went to the state court handling the receivership and sought to impose a constructive trust upon identifiable funds they had contributed to the enterprise. The court denied them relief, ruling the funds were the company's assets. The court believed that distribution pursuant to a constructive trust would be inconsistent with the statutory scheme for distribution to creditors. In light of this decision and the disenchantment of Illinois with equitable conversion by contract, I conclude that ERI would hold no property interest in the patents under Illinois law had the assignment not been made.

---

54. Restatement of Restitution § 160 cmt. a (1937).

55. *See* 5 Austin W. Wakeman Scott & William Franklin Fratcher, The Law of Trusts and Trustees § 462.4 (4th ed.1989).

56. *See id.*

57. *See id.* § 481.2

58. *See id.* § 462.

59. *See* 3 James F. Queenan, et al., Chapter 11 Theory and Practice § 17.33 (1994).

60. *See id.*

61. *See id.*

62. *See* Roger A. Cunningham, et al., The Law of Property § 1.2 (1984).

63. *See* 3 James F. Queenan, et al., Chapter 11 Theory and Practice § 17.33 (1994).

64. *See* 765 Ill.Comp Stat.Ann. 65/1 (West 1993).

65. 127 Ill.2d 434, 130 Ill.Dec. 446, 537 N.E.2d 775 (1989).

Illinois law on this question is, in any event, not determinative. True, "Congress has generally left the determination of property rights in the assets of a bankruptcy estate to state law." [66] But bankruptcy law controls if there is an actual conflict.[67] The Code's definition of "claim" conflicts with any state law recognizing constructive trust rights as property interests.

The legislative history of section 541(d) lends some support to the proposition that a constructive trust claim is a property interest which does not become part of the bankruptcy estate. The committee reports state:

> Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed.[68]

There can be no dispute that a beneficial interest in property held by a debtor in trust for another does not become part of the bankruptcy estate if the parties expressly or impliedly intended to create a trust. But a constructive trust, being a remedy rather than a trust, is another matter. The example given of a medical expense payment is curious. It describes a true trust if the debtor and the insurance company expressly or impliedly intended to create a trust. Or, if the debtor had assigned his insurance claim to the medical service provider, it describes a bailment rather than a trust. The example does not describe a constructive trust unless the insurance company made the payment to the debtor, rather than to the provider, as the result of its mistaken belief

that the debtor had already paid the bill. There is therefore not enough in this legislative snippet to conclude Congress intended to exclude from the bankruptcy estate property held under a constructive trust as well as property held under a true trust.

Most important, exclusion from the estate of an equitable interest in constructive trust property conflicts with the unambiguous definition of "claim" contained in section 101(5). Statutory language must control over this confused and confusing bit of legislative history.[69]

In summary, had the patent assignment not been made, ERI's rights would have constituted a "claim" entitled to only its pro rata share of LeBlanc's bankruptcy estate. In light of the asset values and claim amounts on file with the court, it is hardly obvious that ERI's pro rata share would be 100%. It thus cannot be said as a matter of law that the assignment did not enable ERI to receive more than it would have received if the case were in chapter 7 and the assignment had not been made. I now turn to the question whether the patent assignment involved a transfer of a property interest of LeBlanc.

## IV. PATENT ASSIGNMENT AS A "TRANSFER OF AN INTEREST OF THE DEBTOR IN PROPERTY"

ERI contends the patent assignment involved no transfer of a beneficial interest in LeBlanc's property. This is so, it says, because ERI already held an equitable interest in the patents as the beneficiary of a constructive trust. The result is the same, according to ERI, if the court decree is treated as effecting a preferential transfer within the ninety day period. Prior to the decree, from the time when LeBlanc obtained the patents, ERI contends it has held an equitable interest in them.

**66.** *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (footnote omitted).

**67.** *See id.* at 54–55, n. 9, 99 S.Ct. 914.

**68.** H.R.Rep. No. 95–595, at 368 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6324; S.Rep. No. 95–

989, at 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868.

**69.** *See, e.g., United States v. Noland*, 517 U.S. 535, 542, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996).

■ For the reasons stated in Part III, a constructive trust is a fiction which creates no property interest. I therefore disagree with the decisions holding no transfer takes place for preference purposes due to the prior existence of a constructive trust, some of which rely upon the legislative history to section 541(d) previously discussed.[70] Even if a constructive trust creates a true property interest, ERI was not a constructive trust beneficiary prior to issuance of the court decree ordering the transfer. Under the law of Illinois, made to govern by the parties' employment agreement, a constructive trust comes into being only when a court issues its order of transfer.[71] The court decree would then be regarded as effecting a transfer of a constructive trust interest. The definition of "transfer" is broad enough to include a transfer by force of a court decree.[72] A transfer would of course also occur if the decree operated as a self-executing assignment of all rights of ownership, which apparently it did not.[73]

■ LeBlanc therefore transferred to ERI his beneficial property interest in the patents within ninety days prior to the petition. He did so through execution and delivery of the patent assignment. Alternatively, if a constructive trust is deemed to create a property interest outside of bankruptcy or if the decree is self-executing, he did so involuntarily by means of the court decree.

## V. Fraudulent Transfer Counts

ERI's motion for summary judgment also addresses two fraudulent transfer counts in the complaint. One is based on section 548 of the Code and the other on the Uniform Fraudulent Transfer Act as in effect in Massachusetts.[74]

■ Here ERI is entitled to relief. Although the patent assignment is for a stated consideration of only $1.00, it was not made for less than "reasonably equivalent value" within the meaning of these statutes.[75] The term "value" is defined to include satisfaction of an antecedent debt.[76] At the time of the patent assignment there was a debt in existence in the form of ERI's claim for the value of the patents. The assignment satisfied that debt.

■ Nor did LeBlanc make the patent assignment "with actual intent to hinder, delay, or defraud" his creditors.[77] The assignment was made pursuant to court order.

## VI. Conclusion

I therefore deny ERI's motion for summary judgment on the preference count (Count V) and grant it on the two fraudulent

70. See, e.g., Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.), 13 F.3d 321 (9th Cir.1994).

71. See Suttles v. Vogel, 126 Ill.2d 186, 127 Ill. Dec. 819, 533 N.E.2d 901, 904 (1988) ("A constructive trust is created when a court declares the party in possession of wrongfully acquired property as the constructive trustee of that property."); Eldridge v. Eldridge, 246 Ill.App.3d 883, 186 Ill.Dec. 818, 617 N.E.2d 57, 62 (1993) ("A constructive trust is raised by operation of law and is created when a court finds that a party in possession of wrongfully acquired [or possessed] property is the constructive trustee of the property because it would be inequitable for that party to retain possession of the property."); Pottinger v. Pottinger, 238 Ill.App.3d 908, 179 Ill.Dec. 116, 605 N.E.2d 1130, 1137 (1992) (constructive trust "created when a court declares the party in possession of wrongfully acquired [or possessed] property as the constructive trustee of that property."). See also Berger, Shapiro & Davis, P.A. v. Haeling (In re Foos), 183 B.R. 149 (Bankr. N.D.Ill.1995) (applying Illinois law requiring court decree for constructive trust to arise).

72. See 11 U.S.C. § 101(54) (1994) (term "means every mode, ... voluntary or involuntary, of disposing or parting with property or an interest in property....").

73. The district court's order contained no self-executing language to take effect if LeBlanc failed to execute the assignment. Compare this with the order issued in Reddi–Wip, Inc. v. Knapp–Monarch Co., 104 F.Supp. 204, 210 (D.Mo.1952), which contains such language.

74. See Mass.Gen.Laws ch. 109A (Law.Co-op.1985 & Supp.1997).

75. See 11 U.S.C. § 548(a) (1994); Mass Gen.Laws ch. 109A, § 5 (Law.Co-op.1985 & Supp.1997).

76. See 11 U.S.C. § 548(d)(2) (1994); Mass.Gen. Laws ch. 109A, § 4 (Law.Co-op.1985 & Supp. 1997).

77. See 11 U.S.C. § 548(a) (1994); Mass.Gen.Laws ch. 109A, § 5 (Law.Co-op.1985 & Supp.1997).

transfer counts (Counts III and IV). A separate order has issued to this effect. The order also sets down a pretrial on the preference count and the other remaining counts. The question of LeBlanc's insolvency appears to be the principal remaining issue under the preference count. In light of the assets and liabilities reflected in LeBlanc's schedules, that issue may not be disputed.