**In re Bernice JACKSON, Debtor.**

**Bankruptcy No. 96–46459 JFQ.**

United States Bankruptcy Court,
D. Massachusetts.

Feb. 26, 1999.

Joseph G. Butler, Barron & Stadfeld, P.C., Boston, MA, for Debtor.

John A. Burdick, Burdick & DiLeo, Worcester, MA, trustee.

### DECISION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

A purported mortgage by a dissolved corporation raises the question of reformation by reason of mistake. Bankruptcy of the corporation's officer and sole shareholder adds a further complexity—the question whether reformation rights are merely an unsecured claim in bankruptcy.

The chapter 7 trustee in this case, John A. Burdick, Jr. (the "Trustee"), has moved under section 363(b) of the Bankruptcy Code to sell for $330,000 a home in Concord, Massachusetts. The Trustee proposed to escrow most of the sale proceeds pending resolution of the validity of an alleged mortgage interest held by BankBoston, N.A. ("BankBoston"). James Lapides ("Lapides"), a lien creditor of the Debtor, contests the validity of the mortgage. The sales motion was allowed. By stipulation of the parties, the sales proceeds (net of real estate taxes and a

broker's commission) are now held in escrow by the Trustee pending final resolution of the validity and priority of BankBoston's mortgage.

## FACTS

The facts are not disputed. Bernice D. Jackson (the "Debtor") filed a voluntary petition under chapter 7 of the United States Bankruptcy Code on March 30, 1998. Her non-debtor spouse, Everett B. Jackson, has not filed for bankruptcy relief. Until 1967, the Debtor and her husband owned, as tenants by the entirety, their home located at 70 Seven Star Lane, Concord, Massachusetts (the "home"). On April 25, 1967 the Debtor and her husband conveyed the home by quitclaim deed to Cotuit Realty Associates, Inc., a Massachusetts corporation ("CRA").

On October 31, 1975, the Debtor, her husband and CRA executed documents purporting to grant an $84,000 mortgage on the home to Marblehead Bank and Trust Company ("Marblehead"). The makers of the underlying note were the Debtor, her husband and CRA. In addition to signing the note individually, the Debtor also signed it on behalf of CRA, specifying that she was signing as its president, treasurer and sole stockholder. CRA was the sole party to the mortgage, which the Debtor signed on its behalf as its president, treasurer and sole stockholder. BankBoston, formerly known as The First National Bank of Boston, became the mortgage holder by reason of its merger with Marblehead.

CRA was incorporated on February 23, 1962. The Supreme Judicial Court of Massachusetts dissolved CRA effective September 11, 1969 due to its failure to file annual certificates of condition. It was revived in 1978 for a period of one month for the limited purpose of deeding out certain parcels of real estate previously conveyed. CRA was therefore in existence at the time of the 1967 deed into it but not at the time of the 1975 mortgage.

Lapides is a judgment creditor of the Debtor as the result of the Debtor having sold his art posters, which he had consigned to her for sale, and not remitting the sales proceeds to him. Lapides brought suit in state court and attached the home, alleging to the court that it was owned by the Debtor as the result of CRA's dissolution. He obtained judgment in 1996 and immediately levied his execution. BankBoston does not challenge the validity of Lapides's judicial lien, only its priority over the mortgage.

At the time of the proposed $330,000 sale by the Trustee, the home was subject to encumbrances in these approximate amounts:

| | |
|---|---|
| Town of Concord—real estate taxes | $ 158,000 |
| BankBoston mortgage | $ 36,000 |
| Lapides judicial lien | $ 220,000 |
| Michael Marashian judicial lien | $ 60,000 |
| IRS tax lien | $ 30,000 |
| Total | $ 504,000 |

## REFORMATION BY REASON OF MISTAKE

### Mistake under State Law

If the Debtor had known of CRA's dissolution, as its sole stockholder she could have had a receiver appointed and obtained a transfer of the home into her name. *See* Mass.Ann.Laws ch. 156B, §§ 104, 106 (Law. Co-op.1979). The Debtor was therefore the sole beneficial owner of the property at the time of the mortgage. If she had signed the mortgage instrument in her individual capacity, Marblehead would have received a valid mortgage of her equitable rights. It could have cleared the record by having a court-appointed receiver validate the mortgage. *See id.*

The failure of the parties to take these steps is not fatal to Marblehead's (and BankBoston's) rights. It is obvious that both the Debtor and Marblehead acted in the mistaken belief that CRA was in existence at the time of the mortgage. When a written instrument fails to express the parties' agreement because of a mistake of both parties as to its effect, the court may reform the instrument to express the intended agreement unless reformation would unfairly prejudice a third party such as a good faith purchaser. *See State Police Ass'n v. Commissioner*, 125 F.3d 1, 4 (1st Cir.1997); *Howell v. Glassman*, 33 Mass.App.Ct. 349, 600 N.E.2d 173, 175 (1992); *Restatement (Second) of Contracts* § 155 (1979). I therefore treat the mortgage as having been reformed

to include the Debtor's signature in her individual capacity. I dispense with the state court procedure involving appointment of a receiver and the receiver's execution of validating instruments. I do so under the venerable equitable maxim which treats as having been done that which should be done. *See Independent Wireless Tel. Co. v. Radio Corp.*, 269 U.S. 459, 473, 46 S.Ct. 166, 70 L.Ed. 357 (1926); *Camp v. Boyd*, 229 U.S. 530, 559, 33 S.Ct. 785, 57 L.Ed. 1317 (1913); *Baseball Pub. Co. v. Bruton*, 302 Mass. 54, 18 N.E.2d 362, 365 (1938); *Institut Pasteur v. Cambridge Biotech Corp. (In re Cambridge Biotech Corp.)*, 186 B.R. 9, 16–17 (Bankr. D.Mass.1995), *aff'd*, 212 B.R. 10 (D.Mass. 1997); John Norton Pomeroy, *Equity Jurisprudence* 364 (5th ed.1941); George L. Clark, *Equity* § 20 (1954); Joseph Story, *Commentaries on Equity Jurisprudence* § 81 (14th ed.1918).

■ Lapides concedes it is "possible" that BankBoston has equitable property rights against the Debtor and hence her bankruptcy estate. But he emphasizes that the question before the court is one of BankBoston's priority over his lien. He asserts, not without force, that Marblehead was negligent in not requiring a certificate of CRA's corporate existence as a condition to granting the loan. As between two innocent parties, his argument runs, loss should fall on the negligent party, here BankBoston as Marblehead's successor. Moreover, in searching the public records prior to obtaining his attachment Lapides contends he relied upon CRA's dissolution and the resulting ownership of the Debtor free of the mortgage.

I am not persuaded. Even if we treat Lapides as a creditor who acted in reliance on public records, those records disclosed all the facts forming the grounds for my conclusion that the mortgage is valid. The result would be the same had the records contained no such information. Lapides is not a party who gave consideration in reliance on public records. He is not a purchaser or a secured lender. He dealt with the Debtor on an unsecured basis, depending solely on her promise to remit the proceeds from the sale of his art work. The debt created by the breach of that promise was initially unse-

cured. Only in seeking to collect the debt did Lapides look to the public records. That is not the type of reliance which supports a priority. *See Restatement (Second) of Contracts* § 155 cmt. f (1979) (excluding judicial lien creditors from the protection against reformation rights afforded to bona fide purchasers for value).

## Are BankBoston's Reformation Rights an Unsecured Claim in Bankruptcy?

■ The definition of "claim" includes the following:

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured

11 U.S.C.S. § 101(5)(B) (Law.Co-op.1997).

The mortgage contained "mortgage covenants," which are statutorily defined to include a covenant that the mortgagor owns the property and has the right to sell it. *See* Mass.Ann.Laws ch. 183, § 19 (Law.Co-op.1996). CRA's prior dissolution presumably means there was a breach of these covenants. And BankBoston's reformation rights are arguably a remedy for the breach. But the breach is not one which "gives rise to a right to payment." The right to payment arises from breach of obligations under the note. Breach of these mortgage covenants affects only the mortgage as valid security.

This case is therefore quite different from *CRS Steam, Inc. v. Engineering Resources, Inc. (In re CRS Steam, Inc.)*, 225 B.R. 833 (Bankr.D.Mass.1998). I there dealt with a constructive trust in patents which was created by a court order requiring the debtor to assign the patents to the party entitled to the technology. The debtor had breached his employment obligation by not assigning the technology to his employer. That breach gave rise to an alternative right to payment consisting of the employer's right to recover the value of the patents.

### MASSACHUSETTS CASE LAW

BankBoston relies upon a Massachusetts decision which is based upon principles of

agency law. In *Fay v. Noble*, 61 Mass. (7 Cush.) 188 (Mass.1851), two individuals carrying on an iron casting business purported to incorporate the business, transfer its property to the corporation, issue stock to themselves, and appoint the majority shareholder as the corporation's managing agent. Because of defects in the incorporation process, the corporation never came into existence. Purporting to act for the corporation, the manager borrowed money from the plaintiffs, signed a note and granted them as security a chattel mortgage covering pig iron. Upon default under the note, the plaintiffs sought to replevy the pig iron in a suit brought against the two individuals. The jury returned a verdict for the defendants following instructions which rested upon partnership principles. The Supreme Judicial Court reversed and ordered a new trial. It believed principles of agency rather than partnership controlled. Because of the nonexistence of the corporate principal, the manager in purchasing the pig iron and in granting the mortgage acted as a principal, as the court saw it, even though he purported to act as an agent. The court analogized the situation to one where an agent of an existing principal acts beyond his authority, in which event the purported agent is held responsible as a principal.

In *Fay* there were two individuals with ownership claims to the business assets. Here we do not have that complexity because of the Debtor's status as sole stockholder. *Fay* therefore furnishes ample and additional authority for treating the mortgage as having been executed by the Debtor in her individual capacity. *See also Barker–Chadsey Co. v. W.C. Fuller Co., Inc.*, 16 Mass.App.Ct. 1, 448 N.E.2d 1283 (1983) (distinguishing *Fay* because action involved suit on note executed on behalf of a dissolved corporation, and permitting revival of corporation so as to effect ratification of note and avoid personal liability of officer).[1]

In summary, I treat the Debtor, and hence her bankruptcy estate, as the owner of the property subject to BankBoston's valid mortgage. A separate order has issued declaring the validity of the BankBoston mortgage and its priority over the Lapides judicial lien.

---

1. BankBoston is not aided by the one month revival of CRA's corporate existence. A revival for "all purposes" would have had the effect of ratifying the actions of CRA's officers taken during the time of its dissolution. *See* Mass.Ann. Laws ch. 156B, § 108 (Law.Co-op.1979). But CRA's one month revival for a limited purpose means only that it stood "revived for such time and for the accomplishment of such purpose...." *Id.*